TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00522-CV






Center for Economic Justice and David "Birny" Birnbaum, Appellants



v.



American Insurance Association, et al., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 97-09206, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 In 1996, David "Birny" Birnbaum filed an open-records request seeking disclosure
of Quarterly Market Reports that Texas automobile insurers had filed with the Texas Department
of Insurance.(1) A group of insurers sought and obtained a temporary injunction prohibiting release
of the reports of all Texas insurers. On appeal this Court upheld that injunction on the basis that
the reports were subject to trade-secret protection pending a trial on the merits as to the named
insurance companies. Birnbaum v. Alliance of Am. Insurers, 994 S.W.2d 766, 770 (Tex.
App.--Austin 1999, pet. denied) (Birnbaum I). We modified the temporary injunction, however,
to exclude its protection of reports filed by insurers who were not parties to the suit. Birnbaum
subsequently requested the unprotected reports of the insurance companies(2) named as appellees

in this suit (collectively, the insurance companies), who in turn, sued the Department of Insurance
for a temporary injunction. The trial court granted the temporary injunction and Birnbaum and
the Center for Economic Justice (collectively Birnbaum) appeal that order.(3) We consider on
appeal whether changes made to the Public Information Act after Birnbaum I apply to the requests
at issue here, and if so, whether they compel a different result in this appeal. See Tex. Gov't
Code Ann. §§ 552.001-.353 (West 1994 & Supp. 2001).


DISCUSSION


 Although Birnbaum asks this Court to consider the same issue decided in Birnbaum
I, he contends that subsequent amendments to the Public Information Act (the Act) force us to
reach a different result. Birnbaum asserts that the amended Act deprived the trial court of
jurisdiction to order the Department of Insurance to withhold the Quarterly Market Reports. 
Birnbaum argues that even if the trial court had jurisdiction, granting the injunction was an abuse
of discretion because the insurance companies failed to prove the reports were entitled to trade-secret protection. Birnbaum contends that, in any event, the amended Act now mandates that the
reports be disclosed. Finally, he claims that the trial court erred as a matter of law in overruling
his Robinson challenge to the testimony of the insurance companies' expert witness, and that the
trial court abused its discretion by excluding evidence. We first consider whether the amended
Act applies to the requests at issue here.


I.  Applicability of the 1999 Public Information Act Amendments

 The legislature amended the Public Information Act during the 76th Legislative
Session. E.g., Act of June 18, 1999, 76th Leg., R.S., ch. 1319, §§ 5, 7, 1999 Tex. Gen. Laws
4500, 4501-03 (codified at Tex. Gov't Code Ann. §§ 552.022, .110 (West Supp. 2001)). The
amendments at issue here became effective September 1, 1999. See id. The insurance companies
maintain that the amended Act does not affect this dispute because Birnbaum's open-records
requests were made prior to the effective date of the amendments.

 We note initially that the open-records requests are not in the appellate record. 
Only a brief excerpt from a request dated July 18, 1999, appears in the record. Based on the
pleadings, we can discern that there was more than one request. Several plaintiffs' petitions refer
to requests made on July 19 and 20, 1999. The evidentiary hearing was held July 27, 1999.

 The insurance companies rely on City of Garland v. Dallas Morning News, in which
the supreme court considered the version of the Act that existed when the open-records request
was filed. See City of Garland v. Dallas Morning News, 22 S.W.3d 351, 354, 356, 368 (Tex.
2000). This decision does not clearly direct a court to look only to the date that the open-records
request was filed to determine the applicable statute. While the date of the request provides a
starting point, the nature of the request and the language of the injunction may implicate the
amended statutory provisions.

 Unlike a one-time request for information, an open-ended, continuing request for
data as it becomes available necessarily involves looking to the applicable statute each time the
data is available for release. The language of the request here can be construed as asking for data
that becomes available after September 1, 1999, continuing until the trial on the merits. See
Independent Am. Real Estate, Inc. v. Davis, 735 S.W.2d 256, 261 (Tex. App.--Dallas 1987, no
writ) ("A temporary injunction remains in force only until a final decree is rendered by the district
court."). The excerpted request in the record states: "Pursuant to Gov't Code § 552.228(b), we
request electronic copies of full detail QMR data filed by all companies in the following insurer
groups, beginning with first quarter 1996 experience and continuing through the most recently
available experience, which we believe to be fourth quarter 1998." (Emphasis added.) Some of
the pleadings refer to reports filed through the first quarter of 1999, the most recent records
available before the hearing. The injunction refers to threats by the Department of Insurance to
release the records "for the first quarter of 1996, and any quarter subsequent thereto" and enjoins
any release of the records "previously or hereafter filed with the Department by plaintiffs." The
parties and the trial court interpreted Birnbaum's request to include all data filed with the agency
as it became available, continuing through 1999 and thereafter.(4)

 This open-ended request seeks release of the Quarterly Market Reports filed after
the effective date of the amended Act and the injunction prohibits release of the reports after that
date. We hold that the amended Act governs the release of reports as they become available after
September 1, 1999, even if the request predated this effective date. We therefore consider the
amended Act's impact on the temporary injunction, which protects the records from release
pending trial on the merits. Birnbaum I controls the ability of the trial court to protect the release
of data filed before September 1, 1999. Birnbaum I, 994 S.W.2d 766.

II.  Purpose of the Temporary Injunction

 The trial court, in a temporary injunction hearing, assesses whether the applicant
has shown a probable right to recover at trial and a probable injury in the interim. Universal
Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 576 (Tex. App.--Austin 2000, no pet.). If the
applicant meets this burden, the court may order a temporary injunction. Id. The purpose of a
temporary injunction is to preserve the status quo. Id. "Status quo is defined as 'the last, actual,
peaceable, noncontested status which preceded the pending controversy.'" Id. at 577 (quoting
Transport Co. of Tex. v. Robertson Transps., Inc., 261 S.W.2d 549, 553-54 (Tex. 1953)). A
temporary injunction is a remedial writ through which the court exercises its equity jurisdiction
in order to maintain the status quo. GXG, Inc. v. Texacal Oil & Gas, Inc., 882 S.W.2d 850, 852
(Tex. App.--Corpus Christi 1994, no writ) (citing Rawlins v. Stahl, 329 S.W.2d 308, 311 (Tex.
Civ. App.--Dallas 1959, no writ)). The temporary injunction is a part of the procedural
machinery by which the court keeps control of the case pending trial on the merits. Rawlins, 329
S.W.2d at 311.

 At this preliminary stage, the trial court does not determine that the information
subject to an open-records request is a trade secret. Rather, the trial court ascertains whether the
applicant has established that the information is entitled to trade-secret protection until the trial on
the merits. See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 23
(Tex. App.--Houston [1st Dist.] 1998, no pet.) ("[A]ppellee had shown a probability of success
in proving that its confidential information deserved trade secret protection."). Further, an order
granting trade-secret protection does not mean the protected information is in fact a trade secret. 
See Midland Bldg. & Loan Ass'n v. Sparks Chapel Colored M.E. Church, 35 S.W.2d 774, 775
(Tex. Civ. App.--Dallas 1931, no writ) (holding that the issuance of a temporary injunction does
"not determine the issues of law or fact involved in the main suit, and they are left as they existed
prior to the issuance of such writ").

 The applicant seeking a temporary injunction does not have to prove that it will
ultimately prevail in the litigation. Transport Co., 261 S.W.2d at 552. In an appeal from an order
granting or denying a request for a temporary injunction, appellate review is confined to the
validity of the order that grants or denies the injunctive relief. Universal Health Servs., 24
S.W.3d at 576. The decision to grant or deny the injunction lies within the sound discretion of
the court, and we will not reverse that decision absent a clear abuse of discretion. Id. This Court
may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. 
Id. Rather, we view the evidence in the light most favorable to the trial court's order, indulging
every reasonable inference in its favor, and determine whether the order was so arbitrary as to
exceed the bounds of reasonable discretion. Id.


III.  Effect of Section 552.022(b) on the Trial Court's Jurisdiction

 Birnbaum contends that section 552.022(b) of the amended Act deprived the trial
court of jurisdiction to order that the Department of Insurance withhold the Quarterly Market
Reports from public inspection. See Tex. Gov't Code Ann. § 552.022(b). Section 552.022(b)
provides:


A court in this state may not order a governmental body or an officer for public
information to withhold from public inspection any category of public information
described by Subsection (a) or to not produce the category of public information
for inspection or duplication, unless the category of information is expressly made
confidential under other law.



Id. (emphasis added). Birnbaum argues that this section prohibits the trial court from granting the
injunction below because (1) the Quarterly Market Reports are public information that the Act
requires be released upon request, and (2) the reports are not "expressly made confidential under
other law." See id.

 Section 552.022(b) gives the trial court discretion to order information be withheld
if it is in a category that is expressly made confidential under other law. Id. Because section
552.022(b) does not affect the trial court's ability to order that information be withheld in certain
situations, it is not a jurisdictional statute.

 The trial court may order a temporary injunction to preserve the status quo pending
a trial on the merits. If the injunction order were a decision that the reports are trade secrets, then
there would be no need for a trial. Conversely, if the trial court were prevented from ordering
a temporary injunction, then a potential trade secret would be released and a trial to determine
whether the information is confidential would be pointless. In the instant case, the amended Act
may compel a different conclusion on the merits, but in the interim, the nature of trade secrets
requires that the trial court err on the side of preserving secrecy. The trial court had the ability
under the amended Act to exercise its equitable jurisdiction in ordering the temporary injunction
to preserve the status quo. See GXG, Inc., 882 S.W.2d at 852. We overrule Birnbaum's first
point of error.


IV. Elements of Trade-Secret Protection

 Birnbaum complains that even if the trial court had jurisdiction, it abused its
discretion in ordering the injunction because the insurance companies failed to prove that the
Quarterly Market Reports are entitled to trade-secret protection. We have already held in
Birnbaum I that the reports are subject to trade-secret protection until a trial on the merits. 
Birnbaum I, 994 S.W.2d at 776. Birnbaum asserts that the insurance companies in the instant
cause have failed to meet their burden of proof, requiring that we reach a different result.

 The insurance companies must satisfy six factors to entitle them to trade-secret
protection: (1) the extent to which the information is known outside of the holder's business; (2)
the extent to which it is known by employees and others involved in the holder's business; (3) the
extent of the measures taken by the holder to guard the secrecy of the information; (4) the value
of the information to the holder and its competitors; (5) the amount of effort or money expended
by the holder in developing the information; and (6) the ease or difficulty with which the
information could be properly acquired or duplicated by others. See John Paul Mitchell Sys. v.
Randalls Food Mkts., Inc., 17 S.W.3d 721, 738 (Tex. App.--Austin 2000, pet. filed). At the
evidentiary hearing, Birnbaum and the insurance companies stipulated to four of these factors,
narrowing the dispute to the value of the information to the insurance companies and their
competitors, and the extent of the measures taken to guard the secrecy of the information. 
Birnbaum also asserts that the insurance companies failed to prove they use the data compiled in
the reports in conducting their business.


 A. Value to Competitors

 Birnbaum argues that the insurance companies failed to prove that the Quarterly
Market Reports are valuable to their competitors.(5) He notes that the insurance companies
attempted to satisfy their burden of proving value by claiming that the reports are customer lists,
which have been held to be trade secrets. See id. (citing T-N-T Motorsports, 965 S.W.2d at 22). 
He contends that the Quarterly Market Reports, however, cannot be customer lists as a matter of
law because they do not contain customers' names. He further complains that the insurance
companies' expert witness, Dr. George Berry, abandoned any claim that the Quarterly Market
Reports revealed the reporting insurers' marketing strategies, which also may be protected as trade
secrets. See id.

 In describing the Quarterly Market Reports, Dr. Berry stated that they are lists of
"customers by number who reside within a zip code," as opposed to a customer "list of people by
name, address, and zip code." He testified that competitors could learn from the reports, if
released, whether a particular insurance company is growing or declining in business in a
particular geographic area. He said that for "head-to-head competitor[s]," the reports will tell you
"where to go get their business," informing a competitor "what geographic area to flood with direct
mail, with billboards . . . and how to attack them in terms of where the business is."

 Birnbaum asserts that Dr. Berry's testimony failed to prove that the reports have
value to the insurers' competitors because it was not supported by logic and only reflected Dr.
Berry's "subjective musing." This was a determination for the trial court to make. Even if
Birnbaum correctly characterizes Dr. Berry's testimony, the insurance companies introduced four
additional witnesses who testified about the value of the data to an insurer's competitors. These
witnesses had worked in the insurance industry, specifically in marketing. While admitting that
precise data could not be derived from the Quarterly Market Reports, they testified that
competitors can estimate a company's retention rates in a zip code or strengths and weaknesses
in a given zip code and use this information in their marketing strategies. One witness described
how a competitor could ascertain from the reports a company's increased cancellations in a
particular zip code and how this could lead the competitor to make inferences about profitability
that would inform the competitor's decision to do business in that area.

 Injunctive relief is proper to prevent a party from gaining an unfair market
advantage. See T-N-T Motorsports, 965 S.W.2d at 24. Whether release of the Quarterly Market
Report information will probably result in harm sufficient to give competitors an advantage over
the reporting insurers is a mixed question of law and fact. Birnbaum I, 994 S.W.2d at 783. The
trial judge is entitled to reserve difficult questions of law and fact for full development at trial on
the merits. Id. (citing Keystone Life Ins. Co. v. Marketing Mgmt., Inc., 687 S.W.2d 89, 92 (Tex.
App.--Dallas 1985, no writ)). Appellate review of the temporary injunction may not be used to
obtain an advance ruling on the merits; the question to be decided is whether the trial court abused
its discretion. Id. at 783-84 (citing Iranian Muslim Org. v. City of San Antonio, 615 S.W.2d 202,
208 (Tex. 1981)). While this evidence of value to competitors appears largely conclusory, as we
noted in Birnbaum I, we may not reverse a temporary injunction for abuse of discretion merely
because we disagree with the trial court's decision. Birnbaum I, 994 S.W.2d at 782. In reviewing
the evidence in the light most favorable to the trial court's order, we hold that the trial court did
not abuse its discretion in finding that the reports are valuable to competitors. We overrule
Birnbaum's third point of error.


 B. Measures Taken to Guard Secrecy

 Birnbaum next contends that the insurance companies failed to prove they took
sufficient measures to guard the secrecy of the data in the Quarterly Market Reports. He states
that the insurance companies never claimed the data as trade secrets when they filed the reports
with the Department of Insurance, never commented on or objected to that department's proposed
rule for releasing the vehicle count data, failed to challenge the rule after it was promulgated in
February 1995, and did not sue to stop the release of the reports after Birnbaum's first open-records request in 1996.(6) Birnbaum refers us to the department's rule 5.206(h), which states:


Upon request, the Department shall publish a listing of the number of average
vehicles on policies in force by company by ZIP Code in this state. This
information will enable the Texas Automobile Insurance Plan Association, insurers
and the public to make the necessary credit calculations and allow all interested
parties to monitor which ZIP Codes may be underserved in the future.



28 Tex. Admin. Code § 5.206(h) (1999).

 The insurance companies respond that there was no threat of disclosure until 1996
when Birnbaum made his first open-records request for the Quarterly Market Reports. First, they
explain that prior to the proposed rule, the department did not threaten to release any confidential
information. Next, they contend that Rule 5.206(h) does not put the insurance companies on
notice that the detailed information in the reports would be subject to release. They state that the
first threat of public disclosure occurred on July 24, 1997, when the Department of Insurance
decided to release the reports to Birnbaum. The insurance companies in the present case relied
on the named parties in Birnbaum I to protect their interests, but when this Court modified the
injunction to protect only the named insurance companies, these companies filed Birnbaum II
seeking the same protection. Finally, the insurance companies point to evidence in the record of
their efforts to keep the data in their possession secret from their competitors.

 Birnbaum has not demonstrated that the trial court abused its discretion in finding
that the insurance companies took sufficient measures to guard the secrecy of the data. Rule
5.206(h), by its own language, does not require disclosure of the detailed information in the
Quarterly Market Reports. Instead, it directs the department to publish the "number of average
vehicles on policies in force by company by ZIP Code." Id. (emphasis added). The Quarterly
Market Reports do not contain any average vehicle counts. Further, the insurance companies were
initially protected by a temporary injunction. When that injunction was dissolved as to these
companies and Birnbaum filed an open-records request, they immediately sued for protection. 
Birnbaum does not refute the insurance companies' evidence of measures taken to protect the data
in their possession. We overrule Birnbaum's sixth point of error as it relates to measures taken
to safeguard the data in the reports.


 C. Use of Reports in Business

 In his fourth point of error, Birnbaum claims that the insurance companies failed
to prove they use the information contained in the Quarterly Market Reports in their business. He
states that without showing use of the information in one's business, the data cannot constitute a
trade secret as a matter of law, and as a result, the trial court abused its discretion in granting the
temporary injunction.

 Use of the alleged trade secret in one's business is not among the six factors
required to establish trade-secret protection in the preliminary stage of a temporary injunction. 
John Paul Mitchell, 17 S.W.3d at 738. Rather, "use in one's business" is part of the definition
of a trade secret: any formula, pattern, device, or compilation of information used in one's
business that presents an opportunity to obtain an advantage over competitors who do not know
or use it. Id. Under Texas law, information that satisfies the six factors without more is entitled
to temporary injunctive relief.(7) Id. Because the parties have stipulated to four of the factors and
because we overrule Birnbaum's points of error as to the two disputed factors, we hold that the
insurance companies have satisfied their burden of establishing that they are entitled to trade-secret
protection of the reports, pending a final hearing on the merits.

 To the extent the trial court's order does more than enforce trade-secret protection,
however, it is in error. It is within our discretion to modify an injunction that is overbroad. 
Birnbaum I, 994 S.W.2d at 778. We therefore modify the temporary injunction to delete the
sentence that states: "The Court further finds that the Quarterly Market Report Data constitute
trade secrets that are excepted from disclosure and are privileged and confidential under § 552.110
of the Texas Government Code." We substitute in its stead the following language: "The Court
finds that the Plaintiff insurance companies have demonstrated that the Quarterly Market Report
Data are entitled to trade-secret protection in the interim." With that modification, we overrule
Birnbaum's fourth point of error.


V.  Mandatory Disclosure Under the Amended Act

 Birnbaum maintains that the Quarterly Market Reports, even if they are trade
secrets, are subject to mandatory disclosure under section 552.022(a)(1), which lists categories
of public information. See Tex. Gov't Code Ann. § 552.022(a)(1). He also asserts that the
exception to disclosure in section 552.110(a) does not apply to these facts. See id. § 552.110(a). 
Whether information is subject to disclosure under the Act and whether an exception to disclosure
applies are legal questions of statutory construction. City of Garland, 22 S.W.3d at 357. The trial
court abuses its discretion in granting a temporary injunction when it misapplies the law to the
facts. State v. Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).

 The relevant parts of section 552.022 read:


(a) Without limiting the amount or kind of information that is public information
under this chapter, the following categories of information are public
information and not excepted from required disclosure under this chapter
unless they are expressly confidential under other law:


 (1) a completed report, audit, evaluation, or investigation made of, for, or by
a governmental body, except as provided by Section 552.108 [Exception:
Certain Law Enforcement and Prosecutorial Information]



Tex. Gov't Code Ann. § 552.022(a)(1). "Public information is available to the public at a
minimum during the normal business hours of the governmental body." Id. § 552.021 (West
Supp. 2001).

 Birnbaum asserts that the Quarterly Market Reports are completed reports made for
a governmental body;(8) therefore, the reports are public information that must be made available
to the public. He argues that the reports are not excepted from disclosure because they are not
"expressly confidential under other law."(9) He first maintains that the word "expressly" requires
that the Quarterly Market Reports be mentioned by name in a statute or judicial decision making
them confidential. Second, he contends that "other law" refers to law outside of the Public
Information Act; consequently, a judicial decision or statute other than the Act must identify the
reports as confidential to protect them from disclosure.

 Birnbaum specifically complains that no statute or judicial decision expressly
identifies Quarterly Market Reports by automobile insurers as confidential.(10) Birnbaum mistakenly
reads the phrase "expressly confidential under other law" in isolation from the remaining language
in the statute. The pertinent part of the statute reads: "the following categories of information are
public information . . . unless they are expressly confidential under other law." Id. § 552.022(a)
(emphasis added). This provision does not require that every conceivable trade secret, or every
potential trade secret, be specifically identified in another statute in order to receive trade-secret
protection under the Act. This section requires that the information be in a category that is
expressly confidential under other law.

 Common law protects information that meets the traditional six-factor test for trade-secret protection. T-N-T Motorsports, 965 S.W.2d at 22. Such information receives trade-secret
protection and, therefore, is treated as confidential. See id. Completed reports, then, which meet
these criteria, represent a category of information that is confidential under common law. We hold
that section 552.022(a) did not foreclose the trial court's ability to order a temporary injunction
when the information requested is entitled to trade-secret protection.

 Birnbaum also argues that the insurance companies may not rely on section
552.110(a) as an exception to mandatory disclosure under section 552.002(a). Section 552.110(a)
provides: "A trade secret obtained from a person and privileged or confidential by statute or
judicial decision is excepted from the requirements of Section 552.021." Tex. Gov't Code Ann.
§ 552.110. Birnbaum first states that section 552.022(a) only recognizes exceptions that are found
in statutes or judicial decisions outside of the Act. Because section 552.110 is an exception within
the Act, he maintains it is not contemplated by section 552.022(a). He next contends that section
552.110(a) requires that the insurance companies show either (1) privilege, or (2) confidentiality
by statute or judicial decision, in addition to the traditional six factors to establish trade-secret
protection. We do not read the statute as Birnbaum does; however, we need not reach these
questions. We hold that the trial court did not abuse its discretion in finding that the Quarterly
Market Reports are entitled to temporary trade-secret protection after consideration of the six
factors, whether or not they are also exempt under section 552.110(a). See Tex. R. App. P. 47.1. 
We overrule Birnbaum's first and second points of error as they relate to mandatory disclosure
under the amended Act.


VI. Evidentiary Points of Error


 A. Robinson Challenge

 Birnbaum challenges the admissibility of Dr. Berry's testimony for failure to meet
criteria required of expert testimony. See E.I. du Pont de Nemours & Co. v. Robinson, 923
S.W.2d 549, 556-57 (Tex. 1995). The only issue on appeal which possibly turned on Dr. Berry's
testimony was the value of the information in the Quarterly Market Reports. Because we hold that
the testimony of four additional witnesses was sufficient to establish this element, we need not
decide whether Dr. Berry's testimony met the Robinson requirements. We, therefore, overrule
Birnbaum's fifth point of error.


 B. Exclusion of Evidence

 Birnbaum finally asserts as error the trial court's exclusion of allegedly relevant
evidence that financial institutions have not been harmed by the public release of similar data
under the Home Mortgage Disclosure Act. He also claims the trial court erred in ruling that this
evidence is not analogous to the present situation, while admitting testimony about the release of
similar information from soft drink manufacturers and television sales stores.

 The admission and exclusion of evidence is committed to the trial court's sound
discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). We cannot say
the trial court here abused its discretion in excluding this evidence, particularly in light of the fact
that Birnbaum did not show that his proffered evidence involved trade secrets. We overrule
Birnbaum's sixth point of error as it relates to exclusion of evidence about financial institutions.


CONCLUSION

 The ability of the trial court to grant interim protection of data filed before
September 1, 1999, is controlled by Birnbaum I. We hold that the amended Act applies to the
release of data made available after the effective date of the amendments. The amended Act did
not deprive the trial court of jurisdiction to determine if public information should be withheld
under the terms of the statute and did not foreclose the trial court's ability to grant temporary
injunctive relief to maintain the status quo pending a trial on the merits. The trial court did not
abuse its discretion in finding sufficient evidence that the insurance companies were entitled to
trade-secret protection in the interim and did not err in admitting or excluding certain evidence. 
The trial court erred, however, in reaching the merits of the dispute by declaring that these reports
are trade secrets. We modify the order to delete any holding that these reports are trade secrets
and to reflect that the insurance companies are only entitled to trade-secret protection pending final
hearing on the merits. We affirm the temporary injunction as modified.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Modified and, as Modified, Affirmed

Filed: February 8, 2001

Publish


1. Quarterly Market Reports, compiled by zip code, contain information concerning written
premiums, policy and membership fees, number of vehicles on policies at the end of the previous
quarter, number of vehicles on policies at the end of the current quarter, vehicles added during the
quarter, vehicles canceled or not renewed by the insurer, vehicles canceled for nonpayment, and
vehicles canceled by the insured.
2. The appellees include American Insurance Association; Camden Fire Insurance Association;
Pennsylvania General Insurance Company; General Accident Insurance Company of America;
Potomac Insurance Company of Illinois; Automobile Insurance Company of Hartford,
Connecticut; Standard Fire Insurance Company; Charter Oak Fire Insurance Company; Phoenix
Insurance Company; Travelers Indemnity Company; Travelers Indemnity Company of America;
Travelers Indemnity Company of Illinois; Travelers Indemnity Company of Connecticut; Travelers
Home and Marine Insurance Company; Travelers Personal Security Insurance Company;
Travelers Property Casualty Insurance Company; Hartford Fire Insurance Company; Hartford
Accident and Indemnity Company; Hartford Casualty Insurance Company; Twin City Fire
Insurance Company; Hartford Underwriters Insurance Company; Hartford Insurance Company
of the Midwest; United States Fidelity and Guaranty Company; Fidelity and Guaranty Insurance
Underwriters, Inc.; Fidelity and Guaranty Insurance Co.; American Employer's Insurance
Company; Commercial Union Insurance Company; Employers' Fire Insurance Company;
Northern Assurance Company of America; American Protection Insurance Company; American
Motorists Insurance Company; Lumbermen's Mutual Casualty Company; American Manufacturers
Mutual Insurance Company; American Casualty Company of Reading, Pennsylvania; National
Fire Insurance Company of Hartford; Transportation Insurance Company; Valley Forge Insurance
Company; Commercial Insurance Company of Newark, New Jersey; Firemen's Insurance
Company of Newark, New Jersey; Boston Old Colony Insurance Company; Kansas City Fire and
Marine Insurance Company; Continental Lloyd's Insurance Company; Glen Falls Insurance
Company; Niagara Fire Insurance Company; Fidelity and Casualty Company of New York;
Continental Insurance Company; American Fire and Indemnity Company; American Indemnity
Company; Texas General Indemnity Company; Trinity Universal Insurance Company of Kansas,
Inc.; Security National Insurance Company; Trinity Lloyds Insurance Company; Charter County
Mutual Insurance Company; Charter Indemnity Company; Assurance Company of America;
Maryland Insurance Company; Maryland Casualty Company; National Standard Insurance
Company; Northern Insurance Company of New York; Valiant Insurance Company; Consumers
County Mutual; Germania Insurance Company; Germania Fire and Casualty Company; Sentry
Insurance, a mutual insurance company; Dairyland County Mutual; and State and County Mutual
Insurance Company.
3. Birnbaum and the Center for Economic Justice intervened in the suit. The Department of
Insurance and the Attorney General are not participating in this appeal.
4. The insurance companies do not challenge the ongoing nature of the request.
5. Because, according to Birnbaum, the reports are not valuable to competitors, the insurance
companies failed to show that a competitor could use the reports to irreparably harm the reporting
insurers. Birnbaum concludes, then, that the trial court abused its discretion in finding that release
of the reports would irreparably harm the insurance companies.
6. This is the request that led to Birnbaum I, in which we held that the insurance companies
who were not named parties lacked standing and therefore, were not subject to the temporary
injunction.
7. We note that the mere fact that a company is not utilizing information at the present time does
not prevent that information from being subject to trade-secret protection. Bertotti v. C.E. Shepherd
Co., 752 S.W.2d 648, 653 (Tex. App.--Houston [14th Dist.] 1988, no writ) (citing Elcor Chem.
Corp. v. Agri-Sul, Inc., 494 S.W.2d 204, 213 (Tex. Civ. App.--Dallas 1973, writ ref'd n.r.e.)).
8. The insurance companies do not dispute that the Quarterly Market Reports are completed
reports for the purposes of section 552.022(a)(1).
9. Birnbaum bases this argument on the language in section 552.022(b) when he asserts that the
trial court lacks jurisdiction to order the temporary injunction. Even though we have overruled that
point of error on other grounds, we must decide this question. In order for section 552.022(a)(1) to
apply to the Quarterly Market Reports as Birnbaum suggests, we must deal with similar language
in section 552.022(a).
10. This Court, in Birnbaum I, did not hold that the Quarterly Market Reports are trade secrets. 
Instead, this Court held that the trial court did not abuse its discretion in holding that the reports are
temporarily entitled to trade-secret protection. Birnbaum I, 994 S.W.2d at 782-83.


nt, and
vehicles canceled by the insured.
2. The appellees include American Insurance Association; Camden Fire Insurance Association;
Pennsylvania General Insurance Company;