In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-102 CV


____________________



RICHARD PIZZINI, Appellant


 

V.



ROBERT A. O'NEAL, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-173,561






MEMORANDUM OPINION


 Appellant Richard Pizzini filed a declaratory judgment action against appellee
Robert A. O'Neal seeking a declaration that a covenant not to compete contained in an
employment agreement between the parties was "void and unenforceable as a matter of
law." O'Neal counterclaimed and sought a temporary restraining order and injunctive
relief prohibiting Pizzini from violating the covenant not to compete or using O'Neal's
database of patients to deprive O'Neal of "the business trade of patients properly the
customers of [O'Neal]." O'Neal also claimed the agreement referenced in Pizzini's
petition had been superseded by another employment contract entitled "Facility License
and Management Services Agreement." The trial court entered a temporary injunction
against Pizzini, and he filed this appeal. We affirm.

The Record


 O'Neal, a chiropractor, entered into an agreement to employ another chiropractor,
Pizzini, at O'Neal's Port Arthur facility. (1) The "Facility License and Management Services
Agreement" that O'Neal testified is the employment contract between the parties (2) contains
the following section:

 11. Non-competition and Confidentiality: As a material part of the
consideration of this Agreement, [Pizzini] agrees not to directly or indirectly
own, lease, establish, operate, participate in or practice chiropractic in, or
manage an integrated healing arts facility or to provide chiropractic services,
directly or indirectly, during the term of this Agreement and for two years
thereafter within a twenty (20) mile radius of any office opened by [O'Neal]
prior to the term of the association formed by this agreement. [Pizzini]
recognizes that a breach by [Pizzini] of the provisions of this Section . . .
would cause [O'Neal] irreparable injury for which money damages would
not be an adequate remedy and that [O'Neal] shall be entitled, in addition to
any other[] rights and remedies it may have, at law or in[]equity, to an
injunction enjoining and restraining [Pizzini] from violating the provisions
of this Section. . . .

 [Pizzini] agrees not to communicate, divulge or use for the benefit of
any person, partnership or corporation, any charts or records of patients of
[O'Neal], professional policies, manuals and instructions, reports, lists of
patient names or any other confidential information of any type o[r]
description during the term of employment and for three (3) years after
termination of employment, without receiving the prior written approval of
[O'Neal].


The contract also provides:

 

 During the term of this agreement, [Pizzini] will have access to and
become familiar with various trade secrets. The term "trade secrets" means
devices, secret inventions, processes, compilations of information, records,
skills, methods of operating the Facility, and specifications that are owned
by [O'Neal] and that are regularly used in the operation of the business of
[O'Neal].

 [Pizzini] recognizes that the compilations of information and
techniques used in [O'Neal's] business, gives it an advantage over
competitors who do not know or use it. [Pizzini] shall not disclose any trade
secrets of [O'Neal] directly or indirectly, or use them in any way, either
during or at any time after the term of this Agreement except as required in
the course of this employment under this Agreement. All files, records,
drawings, specifications, equipment and similar items relating to the business
of [O'Neal], whether or not prepared by [Pizzini], shall remain the exclusive
property of [O'Neal] and shall not be removed under any circumstances from
the premises where the work of [O'Neal] is being carrie[d] on. . . .


Furthermore, the contract states, "[e]ither party may elect for any reason to terminate this
Agreement upon fifteen (15) days' written notice to the other party." After approximately
seven years, Pizzini left his employment with O'Neal and opened his own practice.

 According to O'Neal, before Pizzini left O'Neal's practice, Pizzini took a list of
O'Neal's patients. Anitra Williams (the administrator of O'Neal's Port Arthur facility)
testified Pizzini downloaded O'Neal's patient files onto a disk, and the disk was missing 
after Pizzini left. O'Neal introduced into evidence a computer back-up report showing that
someone logged in as Pizzini and retrieved the patient list from O'Neal's hard drive. 
O'Neal testified business cards for Pizzini's new practice were left at O'Neal's Port Arthur
clinic so O'Neal's patients could see them. 

 Pizzini denied obtaining the list of patients. He alleged someone else retrieved the
list from the computer using his name. Pizzini claimed he obtained the names and
addresses of the patients he solicited from personal information in his possession.

 At the hearing on O'Neal's petition for temporary injunction, O'Neal testified
Pizzini had solicited O'Neal's patients. Pizzini admitted he had solicited approximately
four hundred fifty of O'Neal's patients. Pizzini also testified that he had treated two of
O'Neal's former patients. Both O'Neal and Darlene O'Neal, the manager of O'Neal's
practice, testified O'Neal's patients are the lifeblood of his business, and O'Neal would go
out of business without the goodwill derived from his relationship with his patients. 
According to O'Neal, Darlene, and Anitra Williams, Pizzini also diverted payments from
certain procedures to Pizzini's home address. Pizzini testified he had certain payments
sent to his home.

 After the hearing on O'Neal's petition for temporary injunction, the trial court
ordered Pizzini to cease soliciting or caring for patients Pizzini had previously treated
pursuant to his employment with O'Neal, contacting O'Neal's patients, distributing
promotional materials at the homes or work sites of O'Neal's patients, and using agents
or intermediaries to contact O'Neal's patients. The injunction ordered Pizzini to return the
lists of patients, forbade Pizzini from mentioning his former association with O'Neal's
practice in his advertising, and prohibited Pizzini from divulging O'Neal's confidential and
proprietary information.

 The injunction initially further prohibited Pizzini from practicing chiropractic
medicine in his current location for two years and prohibited him from providing
chiropractic services within a twenty-mile radius of O'Neal's facilities. However, the
court subsequently entered an amended temporary injunction that omitted these non-compete provisions but retained all other provisions from the original order. 

Pizzini's Issues


 In his first issue, Pizzini contends the trial court erred in granting the temporary
injunction because "the covenant not to compete upon which the injunction is based is
unenforceable as a matter of law because it fails to comply with Section 15.50 of the Texas
Business and Commerce Code." In his second issue, Pizzini asserts, "the covenant not to
compete upon which the injunction is based is injurious to the public." In his third issue,
Pizzini claims O'Neal's pleadings and the evidence failed to establish all of the
prerequisites for injunctive relief. In his fourth issue, Pizzini contends the trial court erred
by enforcing the covenant not to compete because the evidence was legally and factually
insufficient to prove the existence of a valid contract.

 We review the trial court's order granting temporary injunctive relief under an
abuse of discretion standard. See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.
2002). We review the evidence in the light most favorable to the trial court's order and
indulge all reasonable inferences in favor of the decision. Center for Econ. Justice v.
American Ins. Ass'n, 39 S.W.3d 337, 344 (Tex. App.--Austin 2001, no pet.). When, as
here, the trial court does not file findings of fact or conclusions of law, we will uphold the
order on any legal theory supported by the record. Universal Health Servs., Inc. v.
Thompson, 24 S.W.3d 570, 577 (Tex. App.--Austin 2000, no pet.).

 To obtain a temporary injunction, a party must plead and prove (1) a cause of action
against the defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury before trial. Butnaru, 84 S.W.3d at 204. An employee
has a common law duty not to use confidential or proprietary information acquired during
employment adversely to his employer. Anderson Chem. Co. v. Green, 66 S.W.3d 434,
442 (Tex. App.--Amarillo 2001, no pet.). An agreement not to disclose or use confidential
information may be enforceable even if a related covenant not to compete is not. Tom
James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 888 (Tex. App.--Dallas 2003, no pet.). 
For proprietary or confidential information to warrant protection, it must have a substantial
element of secrecy and give the employer a competitive advantage. Rugen v. Interactive
Business Systems, Inc., 864 S.W.2d 548, 552 (Tex. App.--Dallas 1993, no pet.).

 Pizzini argues O'Neal's pleadings do not specify the irreparable injury and the
imminent harm that O'Neal would suffer and fail to explain why O'Neal lacks an adequate
remedy at law. Pizzini further argues O'Neal provided no evidence of irreparable injury. 
However, the evidence in the record supports the conclusion Pizzini solicited O'Neal's
patients using patient lists taken from O'Neal's computer. O'Neal and Darlene testified
O'Neal's patients are the lifeblood of his business, and O'Neal would go out of business
without them. Darlene testified the employees at O'Neal's practice had separate computer
passwords which were kept secret. O'Neal, Darlene, and Anitra all testified Pizzini
diverted income from certain procedures to Pizzini's home address. O'Neal testified his
injuries could not be remedied by a subsequent judgment, and he would be unable to
determine how much revenue and goodwill Pizzini had taken from him. O'Neal also
testified that he sought an injunction to protect his confidential information, which Pizzini
agreed to keep confidential for three years after termination of his employment. (3) A temporary injunction precedes the final determination of the merits of the case. 
NMTC Corp. v. Conarroe, 99 S.W.3d 865, 867-68 (Tex. App.--Beaumont 2003, no pet.). 
Because the purpose of a temporary injunction is to preserve the status quo pending a trial
on the merits, an applicant for injunctive relief need not prove he will prevail on final trial;
rather the applicant need only plead a cause of action and show a probable right to the
relief sought. See Butnaru, 84 S.W.3d at 211; Sun Oil Co. v. Whitaker, 424 S.W.2d 216,
218 (Tex. 1968). In deciding whether to grant a temporary injunction, the court "may
balance the probable harm to the plaintiff if a temporary injunction is erroneously denied
with the probable harm to the defendant if a temporary injunction is erroneously granted." 
Conarroe, 99 S.W.3d at 868. Viewing the evidence in the light most favorable to the trial
court's order, we find the trial court did not abuse its discretion in determining O'Neal
pleaded a cause of action against Pizzini for violating the confidentiality agreement, a
probable right to relief, and a probable, imminent, and irreparable injury before trial. See
Butnaru, 84 S.W.3d at 204.

 The temporary injunction was properly based on the confidentiality agreement,
rather than the covenant not to compete. The issue of whether the covenant not to compete
is ultimately to be enforced, including whether enforcement of the non-compete agreement
would injure the public, "awaits a final judgment on the merits, such as a final judgment
entered after a jury or bench trial or a hearing on a motion for summary judgment." Tom
James of Dallas, Inc., 109 S.W.3d at 885. The trial court has not yet decided the merits
of the case. The temporary injunction preserves the status quo by precluding Pizzini's use
of the patient list pending trial on the merits. See Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993). Precluding Pizzini from treating patients on the list before trial is not an
unreasonable method of preserving the status quo pending a trial on the mertis.

 We conclude on this record the trial court did not abuse its discretion in granting
the temporary injunction. Pizzini's four issues are overruled. The judgment is affirmed.

 AFFIRMED.

 _____________ ____ 

 DAVID GAULTNEY

 Justice

Submitted on July 6, 2005

Opinion Delivered August 31, 2005


Before Gaultney, Kreger, and Horton, JJ. 
1. The parties to the contract are Richard Pizzini and Health & Medical Associates,
a Texas Corporation. O'Neal signed the contract in his capacity as President. He testified
that Health & Medical Associates is his "d/b/a." Pizzini sued O'Neal in his individual
capacity and no issue of standing or capacity has been raised by the parties. In this
opinion, references to O'Neal include Health & Medical Associates. 
2. The "Facility License and Management Services Agreement" appears to bear
Pizzini's signature. Pizzini contended his signature was forged. O'Neal introduced a copy
of the contract, and he claimed he could not produce the original contract because it was kept
in Pizzini's employment file, which disappeared after Pizzini terminated his employment.
3. The contract also contains a clause stating Pizzini recognizes that any breach of the
non-competition and confidentiality provisions of the contract would cause O'Neal
irreparable injury for which money damages would not be an adequate remedy, and agreeing 
O'Neal would be entitled to an injunction restraining Pizzini from violating the agreement.