COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

                                        NO.
2-06-027-CV

 

 

SHOUKRY
QADDURA,                                                        APPELLANTS

KHALED MOHAMMAD QADDURA,

H.H.O. UNITED GROUP, INC.

d/b/a HALAL ISLAMIC

SLAUGHTERHOUSE d/b/a

HALAL MEAT

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

                                              ------------                                      

 

            FROM THE 415TH
DISTRICT COURT OF PARKER COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction








This case arises under the Texas Meat and Poultry
Inspection Act (the AAct@).  See
Tex. Health & Safety Code Ann. '
433.001-.100 (Vernon 2001).  Appellants,
Shoukry Qaddura, Khaled Mohammad Qaddura, and H.H.O. United Group, Inc. d/b/a
Halal Islamic Slaughterhouse d/b/a Halal Meat (AAppellants@) appeal
a permanent injunction entered against them. 
In five issues, Appellants dispute the amount awarded to the State for
investigative expenses and attorney=s fees
it incurred obtaining the injunction, allege that the trial court erred by
admitting certain exhibits, claim that no evidence exists supporting the
issuance of an injunction, and argue that a portion of the injunction
constitutes an invalid prior restraint on free speech.  Because the Act defines speech-alone
interferences with inspections as a defense to a State claim of interference
with an inspection,  we hold that such
speech cannot be enjoined.  Accordingly,
we will modify the injunction to delete this language.  As modified, we will affirm the injunction.

II.  Background








Shoukry Qaddura and Khaled Mohammad Qaddura own
Halal Meat Processing, a business in Weatherford, Texas primarily engaged in
the slaughter and processing of livestock. 
Pursuant to the Act, the Texas Department of State Health Services (ADepartment@)
inspects the slaughterhouse, live animals, and slaughtered animals.  Tex.
Health & Safety Code Ann. ''
433.024, .021, .022 (Vernon 2001).  A
Department inspector applies a mark of inspection to all carcasses after inspection,
stamping or labeling them with either Ainspected
and passed@ or Ainspected
and condemned.@ Id. '
433.022(b).  To get a Apassed@ mark,
the slaughterhouses must comply with state laws and regulations, as well as
maintain approved Sanitation Standard Operating Procedures ("SSOP")
and a Hazard Analysis Critical Control Plan ("HACCP").  To ensure a slaughterhouse=s
compliance with the applicable laws and regulations, the Department employs an
inspector who conducts almost daily on-site inspections of the
slaughterhouse.  Any violations of state
law, the SSOP, or the HACCP result in the inspector issuing a noncompliance
report for the slaughterhouse.  If a
slaughterhouse persistently fails to comply with laws, regulations, the SSOP,
or the HACCP, then the Department is authorized to remove the mark of
inspection, which ultimately means that a slaughterhouse can no longer
slaughter.  See Tex. Health & Safety Code Ann. '
433.100(a).

From April 2001 to July 2004, the Department
issued over forty-five noncompliance reports at the Halal Meat
slaughterhouse.  Thirty-seven of the
noncompliance reports were issued between May and July 2004.  Consequently, the Department revoked the
slaughterhouse=s mark of inspection in July
2004. 








In October 2004, the State filed an original
petition and application for temporary and permanent injunctions.  One month later, Appellants executed an
agreed temporary injunction, agreeing to cease slaughterhouse operations unless
and until Department inspections established that they were again in compliance
with the SSOP, the HACCP, and the Act. 
The Department continued inspecting the slaughterhouse from the time it
revoked the mark of inspection until July 2005. 
Following the permanent injunction hearing conducted in October 2005,
the court granted the injunction, ordered Appellants to pay $30,500 to the
Attorney General for attorney=s fees,
and ordered Appellants to pay $18,919.17 for investigative expenses incurred by
the Department.  In findings of facts,
the trial court specifically found the attorney=s fees
and the investigative costs awarded in the judgment to be necessary and
reasonable.  

III.  Operative vs. Inoperative Slaughterhouse

In one argument under their first issue,
Appellants claim that expenses incurred by the Department to inspect an
inoperative slaughterhouse are not recoverable expenses under the Act.  Section 433.099(c) of the Act states, A[t]he
commissioner or the attorney general may recover reasonable expenses incurred
in obtaining injunctive relief under this section, including investigation and
court costs, reasonable attorney=s fees,
witness fees, and other expenses.@  Tex.
Health & Safety Code Ann. '
433.099(c) (Vernon Supp. 2006). 








Interpreting statutes is a legal matter, subject
to de novo review.  Bragg v. Edwards
Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002); City of Garland v. Dallas
Morning News, 22 S.W.3d 351, 357 (Tex. 2000).  The overriding goal of statutory
interpretation is to determine the legislature=s
intent.  Cont=l Cas.
Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002).  In determining legislative intent, we are
mindful that the Code Construction Act imposes a presumption that a just and
reasonable result was intended.  See Tex. Gov=t Code Ann. 

'
311.021(3) (Vernon 2005).  To ascertain
legislative intent, we first look to the plain and common meaning of the words
used by the legislature.  Argonaut
Ins. Co. v. Baker, 87 S.W.3d 526, 529 (Tex. 2002).  Words and phrases are to be read in context
and given their common, everyday meaning unless they have acquired a technical
or particular meaning.  See Tex. Gov=t Code Ann. ' 311.011.








 When read
in context, and giving the plain and common sense meaning to the language of
section 433.099(c), it is clear that the legislature intended to allow the
commissioner or the Attorney General to actively pursue injunctive relief
against slaughterhouses and meat processing plants with the understanding that
the listed expenses, fees, and costs would be recoverable.  See Argonaut Ins. Co., 87 S.W.3d at
529.  The statutory provision makes no
distinction between costs incurred in pursuing an injunction against an
inoperative slaughterhouse or those incurred in pursuing an injunction against
an operative one.  Accordingly, the
statutory language chosen by the legislature dictates that reasonable expenses incurred
by the commissioner or the Attorney General in obtaining an injunction are
recoverable under section 433.099(c), regardless of the operative status of the
slaughterhouse or plant.[2]  We overrule this portion of Appellants= first
issue.

IV.  Expenses and attorney=s fees

In the remainder of their first issue and in
their second issue, Appellants also challenge the factual sufficiency of the
evidence to establish that the investigative expenses and attorney=s fees
awarded by the trial court were actually incurred in obtaining injunctive
relief.  Appellants also argue that the
evidence is factually insufficient to demonstrate the reasonableness of the
State=s
attorney=s fees. 

A. 
Factual Sufficiency Standard of Review








An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).

B. 
Evidence Concerning Investigative Expenses

Appellants argue that factually insufficient
evidence exists to establish that $11,551.14 of the $18,919.17 in expenses
awarded by the trial court were actually incurred by the Department in its
effort to obtain injunctive relief. 
Appellants point out that the Department does not charge a fee to
inspect a new slaughterhouse for the purpose of giving it a mark of inspection.  Appellants contend that because their
slaughterhouse closed in July 2004, all subsequent inspections involved a
proposed reopening of the plant akin to the opening of a slaughterhouse, and
therefore claim that no inspection fees should have been imposed.  The fees that were imposed, according to
Appellants, furthered the reopening of the slaughterhouse, not the obtaining of
an injunction.








But Appellants agreed to a temporary injunction
that enjoined the operation of the slaughterhouse Aunless
and until [Appellants=] facility has been determined
through an inspection by the [Department] to be free of violations of
Chapter 433 of the Texas Health and Safety Code.@  The language of the agreed temporary
injunction contemplates that the Department will continue inspections.  After the agreed temporary injunction but
prior to the final trial, the Department inspected the slaughterhouse in
November and December 2004, and July 2005. 
These inspections revealed a high volume of continued regulatory
noncompliance at the slaughterhouse.  

When continued inspections documented Appellants= failure
to comply with the Act following the temporary injunction, the Department
pursued a permanent injunction.  The
permanent injunction was heard on October 27, 2005.[3]  Department representatives testified to the
slaughterhouse=s ongoing violation of the Act.
The trial court granted a permanent injunction enjoining the slaughterhouse
from operating until Department inspectors determined compliance with the Act. 

C. 
Evidence Concerning Attorney=s Fees

Appellants claim factually insufficient evidence
exists to support the award of $30,500 in attorney=s fees
for obtaining injunctive relief. 








An Assistant Attorney General testified regarding
attorney=s
fees.  She testified that the Attorney
General=s Office
had expended a total of 174 hours. Billed at $200 per hour and adding $200 in
expenses, she testified that the total attorney=s fees
were $35,000.  She further testified that
all of the time involved in obtaining the temporary injunction, investigating
the case thereafter, and securing the permanent injunction was necessary and
that the fees were reasonable.   

D. 
Application of Factual sufficiency Standard to Present Facts

Based on the record before us, the evidence is
factually sufficient to support the judgment=s award
of $18,919.17 in investigative costs and $30,500.00 in attorney=s fees
that were incurred in obtaining injunctive relief.  The evidence to the contrary is not so
overwhelming that the award should be set aside.  See Garza, 395 S.W.2d at 823.  We overrule Appellants= first
and second issues.

V.  Admission of State=s
Exhibits 26, 27, 30, 31, and 9

In their third issue, Appellants claim that the
trial court erred by admitting State=s
Exhibits 26, 27, 30, 31, and 9. We address these contentions in turn.








Sequentially, we begin with Appellant=s
complaint concerning State=s
Exhibit 27.  This exhibit is a
handwritten compilation of expenses incurred by the State, including expenses
for the July trial.  Although Appellants
asserted numerous and specific objections to State=s
Exhibits 26, 30, 31, and 9, no objection appears in the record concerning
Exhibit 27.  Accordingly, Appellants=
appellate complaint concerning State=s
Exhibit 27 is not preserved for our review.  See Tex. R. App. P. 33.1(a); Bushell v. Dean, 803 S.W.2d
711, 712 (Tex. 1991) (op. on reh=g).

State=s
Exhibit 26 is a summary of the Department=s
expenses and investigative costs up to the July trial.  Appellant objected to the admission of
Exhibit 26 on the ground that it was hearsay and did not fall within Rule
803(6)=s
business records exception.  See Tex. R. Evid. 803.

Rule 803(6) creates a hearsay exception for
properly authenticated business records. See Tex R. Evid. 803(6). 
Such records may be properly authenticated either by testimony of the
custodian or other qualified witness, or by a self-authenticating
affidavit.  Id.  Rule 901 provides that  authentication or identificationCas a
condition precedent to admissibilityCis
satisfied by extrinsic evidence sufficient to support a finding that the matter
in question is what its proponent claims.  Tex. R. Evid. 901(a); Angleton v.
State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  Rule 901(b) lists several nonexclusive
examples of how a record may be authenticated. 
Tex. R. Evid. 901(b); Angleton,
971 S.W.2d at 67.  Rule 901(b)(1)
specifically permits testimony by an identifying witness with personal
knowledge to attest to the document=s
authenticity.  Tex. R. Evid. 901(b)(1). 









Here, Appellant argues that the trial court abused
its discretion by admitting Exhibit 26 as a business record because it was not
prepared by a Department representative and because the representative could
not particularly describe all entries. 
At trial, however, a Department representative testified that Exhibit 26
was a record regularly kept in the course of business, that he was a custodian
of the record, that it was the regular practice of the Department to keep such
records, and that the records were made at or near the time of the occurrence
by a person with knowledge or by a person furnished with such knowledge.  Thus, the State laid the necessary predicate
for admission of Exhibit 26 as a properly authenticated business record.  The trial court did not abuse its discretion
by admitting State=s Exhibit 26.  See Tex
R. Evid. 803, 901; Angleton, 971 S.W.2d at 67.  Because Exhibit 26 was properly admissible as
a business record, we need not address Appellants=
complaint that the trial court abused its discretion by admitting it under Rule
1006. See Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43
(Tex. 1998) (holding an appellate court must uphold the trial court=s
evidentiary rulings if there are any legitimate basis in the record for the
ruling). 








State=s
Exhibits 30 and 31 are additional expense reports for two Department
representatives relating to the final October trial.  Appellants allege that the trial court abused
its discretion by admitting these exhibits because they were not documents
normally prepared by the Department.  At
the October trial, however, a Department representative testified that based on
his personal knowledge he had prepared Exhibits 30 and 31 documenting the
Department=s expenses for that day of trial
and for the prior day.  He testified that
these reports would normally be kept and recorded by the Department, but
explained that the reports were not yet in the Department=s
records because he had just created them. 
Thus, Appellants= admissibility complaint is
refuted by the Department representative=s
testimony.  We hold that the trial court
did not abuse its discretion by admitting State=s
Exhibits 30 and 31.  See Nat=l Liab.
& Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). 

State=s Exhibit
9 contains eighty-two photographs depicting conditions both inside and outside
the slaughterhouse during the November and December 2004 and July 2005
inspections.  Appellants objected to the
photographs on grounds that they were not relevant and that they were not
properly authenticated.  Recall that at
trial, the State sought a permanent injunction due to Appellants=
continued violations of the Act, the SSOP, and the HACCP.  By statute, a showing of past or present violations
of the Act is sufficient to secure a permanent or temporary injunction.  See Tex.
Health & Safety Code Ann. 








'
433.099(a)(2) (Vernon Supp. 2006). Thus, evidence that tended to make
Appellants= past or continued violations
more or less probable was relevant to the issue of whether conduct constituting
violations should be enjoined and was admissible.  See Tex.
R. Evid. 401, 402.  

Likewise, a Department inspector testified at
trial that he either took the pictures or was present when the pictures were
taken and that each picture was taken to document the slaughterhouse=s
regulatory violations and that each photograph was a true and correct depiction
of what the violation looked like when the photograph was taken.  Consequently, these photographs were properly
authenticated. See Tex. R. Evid.
901(b)(1).  We hold that the trial court
did not abuse its discretion by admitting State=s
Exhibit 9.  We overrule Appellants= third
issue. See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).

VI.  Evidence to Include Shoukry Qaddura In
Injunction

In Appellants= fourth
issue, Appellant Shoukry Qaddura argues that section F of the permanent
injunction should not apply to him because no evidence exists that he engaged
in, condoned, or intended to engage in the conduct enjoined in section F.  Section F of the injunction enjoins all
Appellants from:

F.
Interrupting, disrupting, impeding or otherwise interfering

with
livestock inspections, including use of profane or threatening language
directed at state inspections or making of false accusations of illegal
activity against state inspectors.

 








In an appeal from a permanent injunction, the standard of review is
abuse of discretion.  See Synergy
Ctr., Ltd. v. Lone Star Franchising, Inc., 63 S.W.3d 561, 564 (Tex. App.BAustin
2001, no pet.); W. Wendell Hall, Standards of Review in Texas, 34 St. Mary=s L.J. 1, 47 (2002).  A trial court abuses its discretion by
granting an injunction when it misapplies the law to established facts or when
the evidence does not reasonably support the determination of the existence of
a probable right of recovery or probable injury.  See Marketshare Telecom, L.L.C. v.
Ericsson, Inc., 198 S.W.3d 908, 916 (Tex. App.BDallas
2006, no pet.).  In reviewing the trial
court=s
decision, we draw all legitimate inferences from the evidence in the light most
favorable to the trial court=s
judgment.  Id.








At trial, a Department representative testified
that inspectors had complained that Appellants harassed and intimidated them
during slaughterhouse inspections.  State=s
Exhibit 33Cadmitted without objectionCis an
incident report created by a Department inspector after an inspection at
Appellants= slaughterhouse.  The report describes a vulgar confrontation
with AMr.
Qaddura, owner Halal.@ 
While the record is unclear as to whether AMr.
Qaddura@ was
Khaled Qaddura or Shoukry Qaddura, we must draw all legitimate inferences in
the light most favorable to the trial court=s
judgment.  See id.  Given the aforementioned evidence, we cannot
say that the trial court abused its discretion by enjoining all Appellants,
including Shoukry Qaddura, from the conduct described in section F.  See id.  We overrule Appellants= fourth
issue.

VII.  Interference with Inspections

In their final issue, Appellants argue that
section F of the injunction constitutes an improper prior restraint on free
speech.  Appellants request that we
modify the injunction by striking the Amaking
[of] false accusations of illegal activity against state inspectors@
language included in section F.   

Section 433.099(a)(2) of the health and safety
code permits the State to seek an injunction for any past or present violations
of the Act.  See Tex. Health & Safety Code Ann. '
433.099(a)(2).   The Act prohibits a
person from interrupting, disrupting, impeding, or otherwise interfering with a
livestock inspector while the inspector is performing a duty under the Act. Id.


'
433.0815(a).  In fact, the Act makes such
conduct a criminal offense.  The act also
provides, however, that it is a defense to prosecution if the Ainterruption,
disruption, impediment, or interference alleged consisted of speech only.@  Id. '
433.0815(c).  Because any interruption,
disruption, impediment, or interference with an inspector that stems from
speech alone is not a violation of the Act, it is not subject to the Act=s
injunctive provision. Id. '433.099(a)(2).  We sustain Appellants= fifth
issue.








We modify section F of the permanent injunction
in accordance with Chapter 433 to read as follows:

F.      Interrupting,
disrupting, impeding or otherwise interfering with livestock inspections.

 

See Ctr. for Econ. Justice v. Am. Ins. Ass=n, 39
S.W.3d 337, 347 (Tex. App.CAustin
2001, no pet.) (holding appellate court may modify overly broad injunction.).

VIII.  Conclusion

Having sustained Appellants= fifth
issue, we order section F of the permanent injunction modified as set forth
above.  Having overruled Appellants= issues
one through four, we affirm the permanent injunction as modified.              

 

SUE WALKER

JUSTICE

 

PANEL A: LIVINGSTON, HOLMAN, and WALKER,
JJ.

 

DELIVERED: October 26, 2006











[1]See Tex. R. App. P. 47.4.





[2]A contrary holdingCthat expenses are
recoverable only when an injunction is pursued against an operative
slaughterhouseCwould encourage
slaughterhouses to voluntarily terminate operations when the State seeks an
injunction and thereby avoid paying the costs and expenses associated with the
State obtaining an injunction.  The
increased financial burdens imposed upon the State as a result of such a
holding would ultimately discourage it from pursuing injunctions.  This effect is against the stated purpose of
the Act, to protect the health and welfare of consumers by assuring the
wholesomeness of meat and meat food products. 
Id. Tex. Health & Safety Code Ann. '433.002.





[3]The case originally went
to trial in July 2005, but a new trial was granted to Appellants because their
original counsel withdrew days before the original trial.