Qaddura v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-027-CV

SHOUKRY QADDURA, APPELLANTS

KHALED MOHAMMAD QADDURA,

H.H.O. UNITED GROUP, INC.

d/b/a HALAL ISLAMIC

SLAUGHTERHOUSE d/b/a

HALAL MEAT

V.

THE STATE OF TEXAS STATE

------------ 

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  
Introduction

This case arises under the Texas Meat and Poultry Inspection Act (the “Act”).  
See
 Tex. Health & Safety Code Ann
. § 433.001-.100 (Vernon 2001).  
Appellants, Shoukry Qaddura, Khaled Mohammad Qaddura, and H.H.O. United Group, Inc. d/b/a Halal Islamic Slaughterhouse d/b/a Halal Meat (“Appellants”) appeal a permanent injunction entered against them.  In five issues, Appellants dispute the amount awarded to the State for investigative expenses and attorney’s fees it incurred obtaining the injunction, allege that the trial court erred by admitting certain exhibits, claim that no evidence exists supporting the issuance of an injunction, and argue that a portion of the injunction constitutes an invalid prior restraint on free speech.  Because the Act defines speech-alone interferences with inspections as a defense to a State claim of interference with an inspection,  we hold that such speech cannot be enjoined.  Accordingly, we will modify the injunction to delete this language.  As modified, we will affirm the injunction.

II.  Background

Shoukry Qaddura and Khaled Mohammad Qaddura own Halal Meat Processing, a business in Weatherford, Texas primarily engaged in the slaughter and processing of livestock.  Pursuant to the Act, the Texas Department of State Health Services (“Department”) inspects the slaughterhouse, live animals, and slaughtered animals.  
Tex. Health & Safety Code Ann
. §§ 433.024, .021, .022 (Vernon 2001).  A Department inspector applies a mark of inspection to all carcasses after inspection, stamping or labeling them with either “inspected and passed” or “inspected and condemned.” 
Id
. § 433.022(b).  To get a “passed” mark, the slaughterhouses must comply with state laws and regulations, as well as maintain approved Sanitation Standard Operating Procedures ("SSOP") and a Hazard Analysis Critical Control Plan ("HACCP").  To ensure a slaughterhouse’s compliance with the applicable laws and regulations, the Department employs an inspector who conducts almost daily on-site inspections of the slaughterhouse.  Any violations of state law, the SSOP, or the HACCP result in the inspector issuing a noncompliance report for the slaughterhouse.  If a slaughterhouse persistently fails to comply with laws, regulations, the SSOP, or the HACCP, then the Department is authorized to remove the mark of inspection, which ultimately means that a slaughterhouse can no longer slaughter.  
See
 
Tex. Health & Safety Code Ann
. § 433.100(a).

From April 2001 to July 2004, the Department issued over forty-five noncompliance reports at the Halal Meat slaughterhouse.  Thirty-seven of the noncompliance reports were issued between May and July 2004.  Consequently, the Department revoked the slaughterhouse’s mark of inspection in July 2004. 

In October 2004, the State filed an original petition and application for temporary and permanent injunctions.  One month later, Appellants executed an agreed temporary injunction, agreeing to cease slaughterhouse operations unless and until Department inspections established that they were again in compliance with the SSOP, the HACCP, and the Act.  The Department continued inspecting the slaughterhouse from the time it revoked the mark of inspection until July 2005.  Following the permanent injunction hearing conducted in October 2005, the court granted the injunction, ordered Appellants to pay $30,500 to the Attorney General for attorney’s fees, and ordered Appellants to pay $18,919.17 for investigative expenses incurred by the Department.  In findings of facts, the trial court specifically found the attorney’s fees and the investigative costs awarded in the judgment to be necessary and reasonable.  

III.  Operative vs. Inoperative Slaughterhouse

In one argument under their first issue, Appellants claim that expenses incurred by the Department to inspect an inoperative slaughterhouse are not recoverable expenses under the Act.
  Section 433.099(c) of the Act states, “[t]he commissioner or the attorney general may recover reasonable expenses incurred in obtaining injunctive relief under this section, including investigation and court costs, reasonable attorney’s fees, witness fees, and other expenses.”  
Tex. Health & Safety Code Ann.
 § 433.099(c) (Vernon Supp. 2006). 

Interpreting statutes is a legal matter, subject to de novo review.  
Bragg v. Edwards Aquifer Auth.
, 71 S.W.3d 729, 734 (Tex. 2002); 
City of Garland v. Dallas Morning News
, 22 S.W.3d 351, 357 (Tex. 2000).  The overriding goal of statutory interpretation is to determine the legislature’s intent.  
Cont’l Cas. Co. v. Downs
, 81 S.W.3d 803, 805 (Tex. 2002).  In determining legislative intent, we are mindful that the Code Construction Act imposes a presumption that a just and reasonable result was intended.  
See 
Tex. Gov’t Code Ann.
 

§ 311.021(3) (Vernon 2005).  To ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature.  
Argonaut Ins. Co. v. Baker
, 87 S.W.3d 526, 529 (Tex. 2002).  Words and phrases are to be read in context and given their common, everyday meaning unless they have acquired a technical or particular meaning.  
See 
Tex. Gov’t Code Ann.
 § 311.011.

 When read in context, and giving the plain and common sense meaning to the language of section 433.099(c), it is clear that the legislature intended to allow the commissioner or the Attorney General to actively pursue injunctive relief against slaughterhouses and meat processing plants with the understanding that the listed expenses, fees, and costs would be recoverable.  
See Argonaut Ins. Co.
, 87 S.W.3d at 529.  The statutory provision makes no distinction between costs incurred in pursuing an injunction against an inoperative slaughterhouse or those incurred in pursuing an injunction against an operative one.  Accordingly, the statutory language chosen by the legislature dictates that reasonable expenses incurred by the commissioner or the Attorney General in obtaining an injunction are recoverable under section 433.099(c), regardless of the operative status of the slaughterhouse or plant.
(footnote: 2)  We overrule this portion of Appellants’ first issue.

IV.  Expenses and attorney’s fees

In the remainder of their first issue and in their second issue, Appellants also challenge the factual sufficiency of the evidence to establish that the investigative expenses and attorney’s fees awarded by the trial court were actually incurred in obtaining injunctive relief.  Appellants also argue that the evidence is factually insufficient to demonstrate the reasonableness of the State’s attorney’s fees. 

A.  Factual Sufficiency Standard of Review

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

B.  Evidence Concerning Investigative Expenses

Appellants argue that factually insufficient evidence exists to establish that $11,551.14 of the $18,919.17 in expenses awarded by the trial court were actually incurred by the Department in its effort to obtain injunctive relief.  Appellants point out that the Department does not charge a fee to inspect a new slaughterhouse for the purpose of giving it a mark of inspection.  Appellants contend that because their slaughterhouse closed in July 2004, all subsequent inspections involved a proposed reopening of the plant akin to the opening of a slaughterhouse, and therefore claim that no inspection fees should have been imposed.  The fees that were imposed, according to Appellants, furthered the reopening of the slaughterhouse, not the obtaining of an injunction.

But Appellants agreed to a temporary injunction that enjoined the operation of the slaughterhouse “unless and until [Appellants’] facility has been determined through an inspection by the [Department]
 
to be free of violations of Chapter 433 of the Texas Health and Safety Code.”  The language of the agreed temporary injunction contemplates that the Department will continue inspections.  After the agreed temporary injunction but prior to the final trial, the Department inspected the slaughterhouse in November and December 2004, and July 2005.  These inspections revealed a high volume of continued regulatory noncompliance at the slaughterhouse.  

When continued inspections documented Appellants’ failure to comply with the Act following the temporary injunction, the Department pursued a permanent injunction.  The permanent injunction was heard on October 27, 2005.
(footnote: 3)  Department representatives testified to the slaughterhouse’s ongoing violation of the Act. The trial court granted a permanent injunction enjoining the slaughterhouse from operating until Department inspectors determined compliance with the Act. 

C.  Evidence Concerning Attorney’s Fees

Appellants claim factually insufficient evidence exists to support the award of $30,500 in attorney’s fees for obtaining injunctive relief. 

An Assistant Attorney General testified regarding attorney’s fees.  She testified that the Attorney General’s Office had expended a total of 174 hours. Billed at $200 per hour and adding $200 in expenses, she testified that the total attorney’s fees were $35,000.  She further testified that all of the time involved in obtaining the temporary injunction, investigating the case thereafter, and securing the permanent injunction was necessary and that the fees were reasonable.   

D.  Application of Factual sufficiency Standard to Present Facts

Based on the record before us, the evidence is factually sufficient to support the judgment’s award of $18,919.17 in investigative costs and $30,500.00 in attorney’s fees that were incurred in obtaining injunctive relief.  The evidence to the contrary is not so overwhelming that the award should be set aside.  
See Garza
, 395 S.W.2d at 823.  We overrule Appellants’ first and second issues.

V.  Admission of State’s Exhibits 26, 27, 30, 31, and 9

In their third issue, Appellants claim that the trial court erred by admitting State’s Exhibits 26, 27, 30, 31, and 9. We address these contentions in turn.

Sequentially, we begin with Appellant’s complaint concerning State’s Exhibit 27.  This exhibit is a handwritten compilation of expenses incurred by the State, including expenses for the July trial.  Although Appellants asserted numerous and specific objections to State’s Exhibits 26, 30, 31, and 9, no objection appears in the record concerning Exhibit 27.  Accordingly, Appellants’ appellate complaint concerning State’s Exhibit 27 is not preserved for our review
.  
See 
Tex. R. App. P
. 33.1(a);
 Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).

State’s Exhibit 26 is a summary of the Department’s expenses and investigative costs up to the July trial.  Appellant objected to the admission of Exhibit 26 on the ground that it was hearsay and did not fall within Rule 803(6)’s business records exception.  
See
 
Tex. R. Evid. 803
.

Rule 803(6) creates a hearsay exception for properly authenticated business records. 
See
 
Tex R. Evid
. 803(6).  Such records may be properly authenticated either by testimony of the custodian or other qualified witness, or by a self-authenticating affidavit.  
Id.
  Rule 901 provides that  authentication or identification—as a condition precedent to admissibility—is satisfied by extrinsic evidence sufficient to support a finding that the matter in question is what its proponent claims. 
 Tex. R. Evid
. 901(a); 
Angleton v. State
, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  Rule 901(b) lists several nonexclusive examples of how a record may be authenticated.  
Tex. R. Evid
. 901(b); 
Angleton
, 971 S.W.2d at 67.  Rule 901(b)(1) specifically permits testimony by an identifying witness with personal knowledge to attest to the document’s authenticity.  
Tex. R. Evid
. 901(b)(1).  

Here, Appellant argues that the trial court abused its discretion by admitting Exhibit 26 as a business record because it was not prepared by a Department representative and because the representative could not particularly describe all entries.  At trial, however, a Department representative testified that Exhibit 26 was a record regularly kept in the course of business, that he was a custodian of the record, that it was the regular practice of the Department to keep such records, and that the records were made at or near the time of the occurrence by a person with knowledge or by a person furnished with such knowledge.  Thus, the State laid the necessary predicate for admission of Exhibit 26 as a properly authenticated business record.  The trial court did not abuse its discretion by admitting State’s Exhibit 26.  
See 
Tex R. Evid
. 803, 901; 
Angleton
, 971 S.W.2d at 67.  Because Exhibit 26 was properly admissible as a business record, we need not address Appellants’ complaint that the trial court abused its discretion by admitting it under Rule 1006. 
See Owens-Corning Fiberglass Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998) (holding an appellate court must uphold the trial court’s evidentiary rulings if there are any legitimate basis in the record for the ruling). 

State’s Exhibits 30 and 31 are additional expense reports for two Department representatives relating to the final October trial.  Appellants allege that the trial court abused its discretion by admitting these exhibits because they were not documents normally prepared by the Department.  At the October trial, however, a Department representative testified that based on his personal knowledge he had prepared Exhibits 30 and 31 documenting the Department’s expenses for that day of trial and for the prior day.  He testified that these reports would normally be kept and recorded by the Department, but explained that the reports were not yet in the Department’s records because he had just created them.  Thus, Appellants’ admissibility complaint is refuted by the Department representative’s testimony.  We hold that the trial court did not abuse its discretion by admitting State’s Exhibits 30 and 31.  
See Nat’l Liab. & Fire Ins. Co. v. Allen, 
15 S.W.3d 525, 527 (Tex. 2000). 

State’s Exhibit 9 contains eighty-two photographs depicting conditions both inside and outside the slaughterhouse during the November and December 2004 and July 2005 inspections.  Appellants objected to the photographs on grounds that they were not relevant and that they were not properly authenticated.  Recall that at trial, the State sought a permanent injunction due to Appellants’ continued violations of the Act, the SSOP, and the HACCP.  By statute, a showing of past or present violations of the Act is sufficient to secure a permanent or temporary injunction.  
See 
Tex. Health & Safety Code Ann.
 

§ 433.099(a)(2) (Vernon Supp. 2006). Thus, evidence that tended to make Appellants’ past or continued violations more or less probable was relevant to the issue of whether conduct constituting violations should be enjoined and was admissible.  
See 
Tex. R. Evid.
 401, 402.  

Likewise, a Department inspector testified at trial that he either took the pictures or was present when the pictures were taken and that each picture was taken to document the slaughterhouse’s regulatory violations and that each photograph was a true and correct depiction of what the violation looked like when the photograph was taken.  Consequently, these photographs were properly authenticated. 
See 
Tex. R. Evid.
 901(b)(1).  We hold that the trial court did not abuse its discretion by admitting State’s Exhibit 9.  We overrule Appellants’ third issue. 
See Butnaru v. Ford Motor Co., 
84 S.W.3d 198, 211 (Tex. 2002).

VI.  Evidence to Include Shoukry Qaddura In Injunction

In Appellants’ fourth issue, Appellant Shoukry Qaddura argues that section F of the permanent injunction should not apply to him because no evidence exists that he engaged in, condoned, or intended to engage in the conduct enjoined in section F.  Section F of the injunction enjoins all Appellants from:

F. Interrupting, disrupting, impeding or otherwise interfering

with livestock inspections, including use of profane or threatening language directed at state inspections or making of false accusations of illegal activity against state inspectors.

In an appeal from a permanent injunction, the standard of review is abuse of discretion.  
See Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.
, 63 S.W.3d 561, 564 (Tex. App.–Austin 2001, no pet.); W. Wendell Hall, 
Standards of Review in Texas
, 34 
St. Mary’s L.J. 
1, 47 (2002).  A trial court abuses its discretion by granting an injunction when it misapplies the law to established facts or when the evidence does not reasonably support the determination of the existence of a probable right of recovery or probable injury.  
See Marketshare Telecom, L.L.C. v. Ericsson, Inc.
, 198 S.W.3d 908, 916 (Tex. App.–Dallas 2006, no pet.).  In reviewing the trial court’s decision, we draw all legitimate inferences from the evidence in the light most favorable to the trial court’s judgment.  
Id.

At trial, a Department representative testified that inspectors had complained that Appellants harassed and intimidated them during slaughterhouse inspections.  State’s Exhibit 33—admitted without objection—is an incident report created by a Department inspector after an inspection at Appellants’ slaughterhouse.  The report describes a vulgar confrontation with “Mr. Qaddura, owner Halal.”  While the record is unclear as to whether “Mr. Qaddura” was Khaled Qaddura or Shoukry Qaddura, we must draw all legitimate inferences in the light most favorable to the trial court’s judgment.  
See id
.  Given the aforementioned evidence, we cannot say that the trial court abused its discretion by enjoining all Appellants, including Shoukry Qaddura, from the conduct described in section F.  
See id. 
 We overrule Appellants’ fourth issue.

VII.  Interference with Inspections

In their final issue, Appellants argue that section F of the injunction constitutes an improper prior restraint on free speech.  Appellants request that we modify the injunction by striking the “making [of] false accusations of illegal activity against state inspectors” language included in section F.   

Section 433.099(a)(2) of the health and safety code permits the State to seek an injunction for any past or present violations of the Act.  
See 
Tex. Health & Safety Code Ann.
 § 433.099(a)(2).   The Act prohibits a person from interrupting, disrupting, impeding, or otherwise interfering with a livestock inspector while the inspector is performing a duty under the Act. 
Id.
 

§ 433.0815(a).  In fact, the Act makes such conduct a criminal offense.  The act also provides, however, that it is a defense to prosecution if the “interruption, disruption, impediment, or interference alleged consisted of speech only.”  
Id.
 § 433.0815(c).  Because any interruption, disruption, impediment, or interference with an inspector that stems from speech alone is not a violation of the Act, it is not subject to the Act’s injunctive provision. 
Id.
 §433.099(a)(2).  We sustain Appellants’ fifth issue.

We modify section F of the permanent injunction in accordance with Chapter 433 to read as follows:

F. Interrupting, disrupting, impeding or otherwise interfering with livestock inspections.

See
 
Ctr. for Econ. Justice v. Am. Ins. Ass’n
, 39 S.W.3d 337, 347 (Tex. App.—Austin 2001, no pet.) (holding appellate court may modify overly broad injunction.).

VIII.  Conclusion

Having sustained Appellants’ fifth issue, we order section F of the permanent injunction modified as set forth above.  Having overruled Appellants’ issues one through four, we affirm the permanent injunction as modified. 

SUE WALKER

JUSTICE

PANEL A: LIVINGSTON, HOLMAN, and WALKER, JJ.

DELIVERED: October 26, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
A contrary holding—that expenses are recoverable only when an injunction is pursued against an operative slaughterhouse—would encourage slaughterhouses to voluntarily terminate operations when the State seeks an injunction and thereby avoid paying the costs and expenses associated with the State obtaining an injunction.  The increased financial burdens imposed upon the State as a result of such a holding would ultimately discourage it from pursuing injunctions.  This effect is against the stated purpose of the Act, to protect the health and welfare of consumers by assuring the wholesomeness of meat and meat food products.  
I
d.
 
Tex. Health & Safety Code Ann. §
433.002.

3:
The case originally went to trial in July 2005, but a new trial was granted to Appellants because their original counsel withdrew days before the original trial.