# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00259-CV

**Synergy Center, Ltd., Appellant**

**v.**

**Lone Star Franchising, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN1-01259, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

Appellant Synergy Center, Ltd. ("Synergy") brings this interlocutory appeal from a district-court order granting a temporary injunction enjoining Synergy from (1) declaring its tenant, appellee Lone Star Franchising, Inc. ("Lone Star"), to be in default under a lease with Synergy and (2) presenting and demanding payment under a letter of credit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2001). This Court previously granted Synergy temporary, emergency relief for the limited purpose of allowing Synergy to present the letter of credit. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, No. 03-01-00259-CV (Tex. App.—Austin May 24, 2001, order) (not designated for publication). We now address the merits of the interlocutory appeal and dissolve the temporary injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

Synergy and Lone Star entered into a commercial lease agreement to be effective May 15, 1999. As a condition of the lease, Lone Star was required to establish "a credit line of

$100,000.00 . . . for the sole purpose of acting in lieu of a monetary guarantee in the event of [Lone Star's] default." To satisfy this condition, Lone Star delivered to Synergy a $100,000 irrevocable letter of credit issued by Chase Bank of Texas, N.A., naming Synergy as beneficiary. The expiry date of the letter of credit was May 30, 2001.

Lone Star opened a restaurant in the leased space in December 1999. In March 2001, Lone Star ceased daily operation of the restaurant but continued to pay monthly rent to Synergy. Lone Star alleges that its cessation of operation was due to a drop-off in business resulting from road construction fronting the leased premises. On April 19 Synergy notified Lone Star that it was in default of the lease because Lone Star had (1) "moved out of the Retail Space without authorization[,]" (2) "deserted or vacated a portion of the Retail Space[,]" and (3) "ceased to operate for more than seven (7) consecutive days." Synergy accelerated "all rent for the remainder of the lease term" and demanded payment of $137,860. Synergy threatened that unless the accelerated rent was paid within seven days, it would "pursue additional remedies available to [it] under the Lease."

Lone Star responded by filing this action, claiming, *inter alia*, that the acceleration clause was a penalty and void as a matter of law. The district court granted Lone Star's request for a temporary injunction and enjoined Synergy from (1) "attempting to declare [Lone Star] to be in default of its payment obligations under the May 15, 1999 lease . . . on account of [Lone Star's] failure to pay all or any portion of accelerated rent . . . under the Lease" and (2) "presenting a draft upon, or demanding payment under, Lone Star's letter of credit with Chase Bank . . . for any purported payment obligation that is premised upon [Synergy's] acceleration of rents[.]"

By four issues, Synergy appeals the district court's temporary injunction.

## DISCUSSION

### *Standard of Review*

A temporary injunction's purpose is to preserve the *status quo* between the parties pending a trial on the merits. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (citing *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981)). In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). The decision to grant or deny the injunction lies within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Id*. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985); *see also SRS Prods. Co. v. LG Eng'g Co.,* 994 S.W.2d 380, 383 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (applying abuse-of-discretion standard to application to enjoin presentment and payment of letter of credit). When considering the propriety of a temporary injunction, this Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Center for Econ. Justice*, 39 S.W.3d at 344.

### *The Letter of Credit*

By its second issue, Synergy contends that Texas law prohibits enjoining presentment of a letter of credit absent proof of material fraud that vitiates the entire transaction. A letter of credit is "a definite undertaking . . . by an issuer to a beneficiary at the request or for the account of an applicant . . . to honor a documentary presentation by payment or delivery of an item of value." Tex. Bus. & Com. Code Ann. § 5.102 (a)(10) (West Supp. 2001). It is "an engagement by its issuer to honor demands for payment by the beneficiary upon compliance with the conditions specified in the letter." *SRS Prods.*, 994 S.W.2d at 384. Typically, a letter of credit is the last contract in a series of three contracts. *Philipp Bros. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40 (Tex. 1990) (citing *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 112 (Tex. 1979)). The first contract is between the parties to the underlying obligation. *Id.* The second contract is between the bank and the account party. *Id.* A letter of credit is a contract between the bank and the beneficiary that the bank will make payment upon presentment of the letter and such accompanying documents as may be prescribed in the letter. *Id.* In other words, the letter of credit is a separate contract between the bank and the beneficiary that is independent of the underlying obligations. *See id.* This principle, the "independence doctrine," is designed to preserve the commercial vitality of letters of credit. *Philipp Bros.*, 787 S.W.2d at 40. With certain exceptions not applicable here, the bank must determine whether payment is due the beneficiary without regard to whether the account party and beneficiary have discharged their respective obligations to one another. *Sun Marine Terminals, Inc. v. Artoc Bank & Trust, Ltd.*, 797 S.W.2d 7, 10 (Tex. 1990).[1]

---

[1] In the transaction we examine here, Lone Star is the account party and applicant for, Synergy is the beneficiary of, and Chase Bank is the issuer of the letter of credit. Lone Star and Synergy are

Here the letter of credit is addressed to Synergy, as beneficiary, and provides:

> This letter of credit is available by your draft drawn at sight on Chase Bank of Texas, N.A. duly signed, endorsed and marked: "Drawn under Chase Bank of Texas, N.A. Letter of Credit No. D-289120 dated May 28, 1999" accompanied by the following document:
>
> 1. Beneficiary's manually signed statement on its letterhead reading exactly as follows:
>
> "The undersigned, an authorized representative of [Synergy], hereby certifies that [Lone Star] is in default of its payment obligations under that certain lease between [Synergy] and [Lone Star]."[2]

The supreme court has held that presentment of a letter of credit may not be enjoined unless there is evidence of fraud by the beneficiary. *Philipp Bros.*, 787 S.W.2d at 40.[3] To justify enjoining the presentment of a letter of credit, the fraud must be extreme. A trial court may enjoin presentment only if "the wrong doing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served." *Id.*

---

the parties to the underlying transaction, the lease agreement.

[2] The original letter of credit is typed in all capital letters.

[3] Letters of credit are generally governed by chapter 5 of the business and commerce code. Tex. Bus. & Com. Code Ann. §§ 5.101-.118 (West 1994 & Supp. 2001). Chapter 5 was amended in 1999. Lone Star contends that the pre-1999 version of the code should apply because the letter of credit was issued May 28, 1999, before the effective date of the amendments. *See* Act of March 23, 1999, 76th Leg., R.S., ch. 4, § 10, 1999 Tex. Gen. Laws 7, 21 (amendments applicable only to letters of credit issued on or after September 1, 1999). The 1999 amendments would appear to increase the applicant's burden to show entitlement to injunctive relief when asserting fraud against the other party to the underlying transaction. *Compare* Act of May 29, 1983, 68th Leg., R.S., ch. 442, § 13, 1983 Tex. Gen. Laws 2511, 2576, *with* Tex. Bus. & Com. Code Ann. § 5.109 (West Supp. 2001). However, given the supreme court's interpretation of the prior law's fraud standard, *see Philipp Bros. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40-41 (Tex. 1990), we find no substantive difference in the application of the two provisions.

(quoting *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 182 (Tex. App.—San Antonio 1983, no writ)); *SRS Prods.,* 994 S.W.2d at 384-85 (wrongdoing must be "egregious, intentional, and unscrupulous"). *But see Goldome Credit Corp. v. University Square Apartments*, 828 S.W.2d 505, 509 (Tex. App.—Amarillo 1992, no writ) (holding that presentment of documents signed by officer of corporation when corporation did not exist posed risk of double payment on debt, thereby constituting fraud, which vitiated transaction).

Lone Star argues that the acceleration clause in the lease agreement operates as a penalty, is void as a matter of law, and should therefore constitute material fraud triggering the temporary injunction. We disagree. In *Philipp Bros.*, the supreme court specifically disapproved language of the court of appeals implying that a trial court may enjoin presentment of a letter of credit where the beneficiary's actions excused the credit account party from its underlying contractual liability. 787 S.W.2d at 40. "The purpose of a letter of credit is to assure payment when its own conditions have been met, irrespective of disputes that may arise between the parties concerning performance of other agreements which comprise the underlying transaction." *Sun Marine Terminals,* 797 S.W.2d at 10. The fact that there is a dispute between the parties regarding the lease terms cannot bar Synergy from presenting the letter of credit to the bank for payment. Synergy and Lone Star agreed to the lease terms. Even if the acceleration clause is ultimately held to be an unenforceable penalty, as urged by Lone Star, we cannot say that Synergy has committed anything approaching the intentional or unscrupulous conduct that would deprive Lone Star of any benefit of the lease agreement and transform the letter of credit into a means for perpetrating a fraud. *See GATX Leasing*, 657 S.W.2d at 183. Simply stated, if the acceleration clause is unenforceable,

6

Synergy's reliance on it does not constitute the fraud required by the business and commerce code to justify enjoining Synergy from presenting the letter of credit. *See Philipp Bros.*, 787 S.W.2d at 40-41. Lone Star and Synergy negotiated the terms of the lease agreement at arm's length. The record before us reflects that neither party occupied a dominant bargaining position with regard to the other. They both agreed to the clause that Lone Star now asserts cannot be enforced against it. The "viability of a letter of credit as a payment device depends upon its independence from the transaction of which it is a part." *Sun Marine Terminals*, 797 S.W.2d at 10. We hold that the district court abused her discretion in enjoining Synergy from presenting the letter of credit.

### Acceleration Clause

The district court also temporarily enjoined Synergy from "directly or indirectly attempting to declare [Lone Star] to be in default of its payment obligations under the . . . lease." Lone Star argues that the district court did not abuse her discretion in so enjoining Synergy because Lone Star established a probable right of recovery on its allegation that the lease's acceleration clause is an unenforceable penalty. *See Walling*, 863 S.W.2d at 58 (citing *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)) (holding that trial court may grant temporary injunction if applicant demonstrates "probable right to recover damages and probable injury in time before trial"); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). We disagree in two respects.

Synergy's April 19, 2001 letter to Lone Star specifically declared the lease in default, accelerated the rent for the remainder of the lease term, and demanded immediate payment of the

7

accelerated amount.[4] To receive payment under the letter of credit, Synergy must present the letter accompanied by a statement that Lone Star "is in default of its payment obligations" under the lease. Enjoining Synergy from declaring Lone Star in payment default of the accelerated rent serves no purpose other than to deny Synergy the ability to present to the bank the signed statement required in order to receive payment upon presentment of the letter of credit and avail itself of a remedy to which it is arguably entitled under the terms of the lease. This is but another way of barring Synergy from presenting the letter of credit and is prohibited under the *Philipp Bros.* standard. 787 S.W.2d at 40.

Furthermore, in order to obtain a temporary injunction, Lone Star must also establish that it will suffer probable injury. *Thompson*, 24 S.W.3d at 577. To establish probable injury, Lone Star must demonstrate that it has no adequate remedy at law. *Id.* In other words, Lone Star "must show an injury for which there can be no real legal measure of damages or none that can be determined with a sufficient degree of certainty, *i.e.*, a noncompensable injury." *Id.* (citing *Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex. App.—Houston

---

[4] The letter reads, in pertinent part:

> As a result of [Lone Star's] default [Synergy] has elected to exercise the remedy available to [Synergy] under . . . the Lease, being the acceleration of all rent for the remainder of the lease term. The accelerated rent through the remainder of the lease term totals $137,869.00 (the "Amount Due"). This letter will serve as notice of acceleration of the rent to [Lone Star]. The Amount Due is due and payable by [Lone Star] to [Synergy] immediately. [Synergy] hereby demands that [Lone Star] pay the Amount Due. In the event [Lone Star] fails to pay the Amount Due within seven (7) days after the date of this written demand, [Synergy] will pursue additional remedies available to [Synergy] under the Lease.

[1st Dist.] 1984, no writ)). Lone Star has an adequate remedy at law: a suit for money damages against Synergy for wrongful presentment of the letter of credit on the underlying lease agreement. *See GATX Leasing*, 657 S.W.2d at 183.

Therefore, we hold that the district court abused her discretion in effectively barring presentment by enjoining Synergy from declaring Lone Star in default of its payment obligations on the accelerated rent.

## CONCLUSION

We sustain Synergy's second issue, reverse the order of the district court, and dissolve the temporary injunction.[5]

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded

Filed: December 6, 2001

Publish

---

[5] Because we sustain Synergy's second issue and dissolve the temporary injunction, we do not reach its other issues. *See* Tex. R. App. P. 47.1 (opinion to be as brief as practicable to decide issues necessary to final disposition).

9