# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00184-CV

### W. R. Grace & Co. – Conn., Appellant

### v.

### Willie Posey, Appellee

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 06-1919, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the denial of a temporary injunction. Willie L. Posey formerly worked as a sales representative for W.R. Grace & Co. - Conn. (WRG). After Posey went to work for a WRG competitor, WRG sued Posey, alleging that Posey had breached his employment agreement by soliciting WRG customers on behalf of his new employer and by disclosing WRG's confidential and proprietary information. WRG sought to enjoin Posey from disclosing or using any of WRG's proprietary or confidential information and from soliciting or contacting WRG customers. Following an evidentiary hearing, the district court issued an order denying WRG's application for temporary injunction. WRG appeals from this order.[1] We affirm the order.

---

[1] *See* Tex. Civ. Prac. & Rem. Code. Ann. § 51.014(a)(4) (West Supp. 2006).

## BACKGROUND

WRG develops and sells chemical additives (a/k/a "admixtures") used by cement and concrete manufacturers. In July 1988, WRG hired Posey as a sales representative assigned to its southwestern United States region. "In consideration of [his] employment," Posey entered into an employment agreement whereby he agreed to certain restrictions and conditions. These included prohibitions against his using or disclosing certain WRG proprietary information (the "nondisclosure provision") and his working for a WRG competitor for a period of one year after leaving WRG's employment (the "noncompetition covenant").

The nondisclosure provision states:

1 (a) Except in the performance of duties as an employee of the company, Employee shall not at any time or in any manner make or cause to be made any copies, pictures, duplicates, facsimiles, or other reproductions or recordings, or any abstracts or summaries of any reports, studies, memoranda, correspondence, manuals, customer lists, records, formulae, plans or other written, printed, or otherwise recorded materials of any kind whatever belonging to or in the possession of the Company. Employee shall have no right, title, or interest in any such material, and Employee agrees that (except in the performance of duties as an employee of the Company) Employee will not remove any such material from any premises of the Company and will surrender all such material to the Company immediately upon the termination of Employee's employment, or any time prior thereto upon the request of the Company.

(b) Without the prior written consent of the Company, Employee shall not at any time or in any manner (whether during or after Employee's employment with the Company) use for the Employee's own benefit or purposes, or for the benefit or purposes of any other person, firm, partnership, association, corporation, or business organization, entity, or enterprise, or disclose (except in the performance of duties as an employee of the Company) in any manner to any person, firm, partnership, association, corporation or business organization, entity, or enterprise, any trade secrets, information, data, know-how, or knowledge (including, but not limited to, trade secrets, information, data, know-how, or knowledge relating to purchasing, suppliers, sales, customers, market development programs, costs, products,

2

apparatus, equipment, processes, or manufacturing methods, compositions, designs, or plans or employees) belong to, or relating to the affairs of, the Company.

Within the employment agreement, Posey agreed that the noncompetition covenant, attached as Schedule B, "is an operative part of this Agreement." The noncompetition covenant provides, in relevant part:

> For a period of one (1) year after Employee is no longer employed (for any reason whatever) by the Company, Employee will not, without the prior written consent of the Company, (i) directly or indirectly engage in or (ii) assist or have any active interest in . . . or (iii) enter the employment of or act as an agent, broker or distributor for or adviser or consultant to any person, firm, corporation or business entity which is or is about to become directly or indirectly engaged in the development, manufacture or sale of any product which competes with or is similar to any product manufactured, sold or under development by the Company at any time while Employee is employed by the Company, in any area in the United States in which such product is, at the time the Employee ceases to be employed, manufactured or sold by the Company, provided that this restriction shall apply only with respect to products with whose development, manufacture or sale the Employee shall have been concerned or connected during the one (1) year period immediately prior to Employee's ceasing to be an employee of the Company.

After working for eighteen years as a WRG sales representative, Posey went to work for one of WRG's competitors, Sika Corporation, as a senior sales representative in October 2006. Sika's written offer of employment to Posey, dated October 6, 2006, states in part:

> [W]e are not interested in confidential business information or trade secrets from your former employer, W.R. Grace. Rather, we are looking for your sales talent to contribute to the success of our business. We do not want you to use any of the confidential and/or proprietary information while you are working for us. We ask that you not use or divulge any confidential and/or proprietary information obtained during your employment with W.R. Grace and require that you sign an Agreement on Prohibited Disclosures as a condition of this offer.

3

On October 16, Posey gave notice to WRG that he was retiring (effective that same day) and, on the next day, he accepted Sika's employment offer. Pursuant to the terms of that offer, Posey signed an "Agreement on Prohibited Disclosures" that stated:

> Sika Corporation ("Sika") expects you to protect and secure Sika's intellectual property and proprietary information. Likewise, Sika requires you to protect the intellectual property and proprietary information of your former employers. In short, Sika does not want to receive and does not want you to use in your employment with Sika any confidential or proprietary information that you may have developed or to which you were exposed at your previous employer. Accordingly, as a condition of your employment with Sika:

> You agree not to use, have in your possession, or refer to any information, data, process, or method which is or was claimed to be confidential or proprietary by any former employer, customer, supplier or consultant.

> By way of clarification, and not by limitation, you agree neither to use, have in your possession, nor refer to any of the following items from a former employer . . . if such information is or was claimed to be confidential or proprietary:

| | |
|---|---|
| • Blue Prints | • Files |
| • Business Plans | • Financial Information |
| • Computer Programs | • Formulas |
| • Computers | • Manuals |
| • Confidential Knowledge | • Market Information |
| • Consultant Lists | • Marketing Materials |
| • Customer Lists | • Notebooks |
| • Data Bases | • Notes |
| • Confidential or Proprietary Data | • Original Works of Authorship |
| • Computer Media (e.g., disks CDs) | • Sketches |
| • Documents | • Software |
| • Employee Lists | • Telephone Directories |
| • Equipment | • Trade Secrets |
| • Training Materials | • Vendor Lists |

4

On November 21, 2006, approximately one month after Posey left WRG to work for Sika, WRG sued Posey, alleging breach of contract, misappropriation of confidential and proprietary information, and breach of fiduciary duty. WRG sought a temporary restraining order and temporary injunction to enjoin and restrain Posey "from disclosing or using any proprietary or confidential information belonging to WRG" and "from soliciting, contacting, calling upon, communicating with or attempting to communicate with [certain WRG customers] in an attempt to sell or provide any product, equipment or service that is competitive with any product equipment or service offered by WRG." WRG also requested that the district court order Posey to "immediately return any confidential or proprietary information belonging to WRG." The district court issued an order denying WRG's application for a temporary injunction. WRG appeals from this order.

## DISCUSSION

**Standard of review**

A temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The purpose of a temporary injunction is to preserve the subject matter of the litigation pending a trial on the merits. *Id*. To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.—Austin 2001, no pet.).

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. A reviewing court must not substitute its judgment for the

5

trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* A trial court does not abuse its discretion when it bases its decision on conflicting evidence, as long as some evidence in the record reasonably supports the trial court's decision. *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 105-106 (Tex. App.—Austin 2003, no pet.). As a reviewing court, we must view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Id.* When, as here, the trial court does not make findings of fact or conclusions of law, we must uphold the court's decision to deny the temporary injunction on any legal theory supported by the record. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

**Noncompetition covenant**

In its first issue, WRG asserts that the district court abused its discretion in denying its request for a temporary injunction to enjoin Posey from soliciting WRG customers. WRG devotes much of its argument to establishing the enforceability of the noncompetition covenant—specifically arguing that the employment agreement, which does not recite any explicit reciprocal promises of WRG, is nonetheless an "otherwise enforceable agreement" in light of *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006). *See* Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2002).[2] We need not address here whether the noncompetition covenant is enforceable, however. Even if it was enforceable, the district court would not have

---

[2] *See also W. R. Grace & Co.-Conn v. Taylor*, No. 14-06-01056-CV, 2007 Tex. App. LEXIS 3779, at *5 (Tex. App.—Houston [14th Dist.] May 17, 2007, no pet. h.) (mem. op.).

abused its discretion in denying the temporary injunction on the basis that WRG failed to prove that it would suffer a probable, imminent, and irreparable injury.

An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru,* 84 S.W.3d at 204. Relying on *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), WRG asserts that a "loss or potential loss of customer goodwill and clientele alone constitutes irreparable harm." However, on this record, the district court would not have abused its discretion in determining that WRG had failed to prove that it has lost or is in danger of losing customers.

At the hearing on its request for a temporary junction, Posey's attorney asked WRG's corporate representative if WRG had lost any business due to Posey's departure to Sika:

Q:      It's true, is it not, that you can't name one customer, one contract, one purchase order that Grace has lost because of anything you-all claim Mr. Posey has done?

A       In Mr. Posey's former territory, we have not lost any customers. However, we did lose a customer for a period of time in December to Sika, but [that customer] returned back to Grace due to performance issues.

* * *

Q:      What happened was is that NAPCO had been a Grace customer for a long time. Right?

A:      That's correct.

Q:      Then they decided to try the Sika product that Mr. Posey had talked to them about. Right?

A:      That's correct.

7

Q:     And they didn't like it, and they have now come back to you, and you're under contract to them and they're still your customer. Right?

A:     That's correct.

During oral argument before this Court, WRG's attorney represented that WRG had to make a price concession in order to regain that customer's business and that this price concession constituted proof of irreparable injury. We find nothing in the record regarding WRG's making price concessions in order to regain customer business. Having found no other evidence of irreparable injury, we conclude that the district court did not abuse its discretion in denying WRG's request for a temporary injunction to enforce the noncompetition covenant.

**Nondisclosure provision**

In its second issue, WRG contends that the district court abused its discretion in denying its request for a temporary injunction to enforce the nondisclosure provision. WRG argues that it furnished Posey with confidential information during his employment and that Posey accessed that information after he began negotiations for employment with Sika. However, at the hearing on the temporary injunction, Posey testified that he returned or destroyed all physical forms of information relating to his employment with WRG and WRG cites no evidence showing that Posey has actually used or disclosed any of WRG's confidential information while working for Sika. In fact, Posey's employment agreement with Sika explicitly prohibits the use or disclosure of such information. On this record, we conclude that the district court did not abuse its discretion in concluding that WRG had failed to prove a probable, imminent, and irreparable injury from Posey's

8

disclosing information governed by the nondisclosure provision and in denying a temporary injunction to enforce that provision.

## CONCLUSION

We affirm the district court's order denying WRG's application for temporary injunction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:   August 30, 2007

9