# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00594-CV

**S. Belinda Wright, Appellant**

**v.**

**The First National Bank of Bastrop; Cody Mauck, Individually and as President of First National Bank of Bastrop, Elgin Branch; The Davis Law Firm; and Johnnie F. Davis, Appellees**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 28,672, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the denial of a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012). S. Belinda Wright, appellant, owns a building in downtown Elgin, Texas. To purchase the building, Wright took out a loan from First National Bank of Bastrop ("the Bank") evidenced by a promissory note and secured by a deed of trust. When the Bank notified Wright that it had accelerated the note due to default and intended to sell the property at a non-judicial foreclosure sale, Wright filed suit in district court alleging causes of action for breach of contract, fraud and related torts, and breach of fiduciary duty. Wright also sought a declaration that she had a right to "reinstate the loan" and cure the default. Wright applied for a temporary injunction to prohibit the Bank from foreclosing on the property. The trial court

denied the application. In nine issues, Wright contends that the trial court abused its discretion by denying the application. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2002, Wright executed a promissory note in the amount of $124,000 payable to the Bank and used the borrowed money to purchase a building in downtown Elgin. To secure the note, Wright also executed a deed of trust granting the Bank a lien on the building. On May 14, 2012, the Bank sent Wright a notice informing her that she was in default on the note and advising her that if she did not cure the default by paying the past-due amounts, it would foreclose on the building. The Bank mailed the notice to 794 FM 3000, Elgin, Texas. On June 11, the Bank sent a notice to Wright, again mailed to 794 FM 3000, informing her that, due to her failing to cure the default, it was accelerating the note. The Bank demanded payment of the full amount remaining on the note and advised that a non-judicial foreclosure sale would take place on July 3. According to Wright, although she owned the property at 794 FM 3000, she did not live there and did not regularly check the mail at that address.[1] She stated that she discovered the June 11 notice on June 22 when she happened to check the mailbox at 794 FM 3000. Wright testified that she had previously informed the Bank that notices should be sent to her at 403 Bandera Woods Boulevard, Elgin, Texas, the address at which she resided. Wright testified that she went to the Bank the following Monday (June 25) and spoke with the Bank's president, Cody Mauck, who she claims assured her that the Bank had not actually posted the property for foreclosure. Wright then went to

---

[1] Wright's testimony was given during a hearing on her application for a temporary injunction held on August 20.

2

the Bastrop County Clerk's office and discovered that the Bank had posted the building for the July 3 foreclosure sale. Wright testified that when she called Mauck on June 26 to inquire as to the past-due amount needed to cure the default, he informed her that, because the note had been accelerated, the Bank would only accept payment of the full amount of the loan balance. According to Wright, she went to the Bank on June 29 and attempted to tender the past-due amount, but the Bank refused to accept it. But Mauck also informed Wright that the Bank was pulling the building from the July 3 foreclosure sale.

On July 5, the Bank sent a new notice to the 794 FM 3000 address informing Wright that, due to default, the note had been accelerated. The Bank demanded payment of the full amount remaining on the note and advised that a non-judicial foreclosure sale would take place on August 7. On August 6, Wright filed her original petition and applications for temporary restraining order, temporary injunction, and permanent injunction. The trial court granted a temporary restraining order prohibiting the Bank from foreclosing on the building for fourteen days and set a temporary injunction hearing for August 20. The sale scheduled for August 7 did not take place.

On August 8, the Bank mailed a notice to Wright at her 403 Bandera Woods address informing her that the note was in default due to unpaid principal and interest and also due to the fact that Wright had failed to maintain hazard insurance on the property and had allowed an IRS tax lien to be filed against the property. The Bank demanded that Wright cure these defaults by paying the amounts past due by September 5, providing proof of hazard insurance coverage, and providing a release of the IRS tax lien. The Bank informed Wright that if she cured the defaults, the note would be reinstated and the Bank would commence accepting regular payments. The notice further stated

3

that in the event Wright did not cure the default by September 5, the Bank would accelerate the note and, if the full balance was not paid, foreclose on the building.

The trial court held a hearing on Wright's application for a temporary injunction on August 20. At the hearing, Wright argued that the Bank should be enjoined from foreclosing on the building because, in her view, the Bank's notices did not comply with the notice requirements of property code section 51.002, which, she contends, deprived her of her statutory right to cure the default. *See* Tex. Prop. Code Ann. § 51.002 (West Supp. 2012). Wright testified at the hearing and described the series of notices sent by the Bank as well as her various conversations with Bank officials and the Bank's attorney regarding the foreclosure efforts. Wright asserted that under section 51.002 of the property code she was entitled to 20 days to cure the default and that she was deprived of this opportunity because the Bank sent the notice to her 794 FM 3000 address rather than the Bandera Woods address. She stated that the second notice, sent on July 5, was also sent to the "wrong" address and purported to accelerate the note without providing her any opportunity to cure the default. Wright argued that she had a substantial likelihood of prevailing on the merits of her claim that the Bank's foreclosure efforts violated the property code by effectively, and wrongfully, depriving her of an opportunity to cure the default. Wright requested that the trial court enjoin the Bank from proceeding on any foreclosure until she had cured all defaults. The trial court denied Wright's application for a temporary injunction,[2] and Wright perfected this appeal.

---

[2] Although the trial court did not file findings of fact or conclusions of law, and the order does not set forth the ground for denying the request for temporary injunction, the trial court stated at the conclusion of the hearing that: "[T]he Court finds that the plaintiffs are asking for an injunction against something that hasn't happened yet."

## STANDARD OF REVIEW

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalf*, 863 S.W.2d 56, 57 (Tex. 1993). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is "the last actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962) (per curiam)). To obtain a temporary injunction, the applicant must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. A probable injury is one that is imminent, irreparable, and has no adequate remedy at law. *Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.).

In an appeal from an order granting or denying a request for a temporary injunction, our review is confined to the validity of the order that grants or denies the injunctive relief. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.—Austin 2001, no pet.). The decision to grant or deny an injunction is within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Walling*, 863 S.W.2d at 57. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (citing *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). In

5

deciding whether the trial court has abused its discretion in denying or granting a request for a temporary injunction, the reviewing court may neither substitute its judgment for that of the trial court nor consider the merits of the underlying lawsuit. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Synergy Ctr., Ltd.*, 63 S.W.3d at 564. We must review the evidence in the light most favorable to the order and must indulge all reasonable inferences in favor of the decision. *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 344 (Tex. App.—Austin 2001, no pet.). In the absence of specific findings of fact and conclusions of law, the trial court's order must be upheld on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

## DISCUSSION

Issues one through six, which Wright combines for argument, assert several grounds to support Wright's contention that the trial court abused its discretion by denying her application for a temporary injunction, arguing that she has a probable right to recover on her claim that the Bank's notices were insufficient. As the Bank correctly notes, however, any request that the Bank be enjoined from proceeding with the foreclosures that were scheduled for July 3 and August 7 was moot by the time of the hearing on Wright's application for a temporary injunction, as those dates had already passed without the Bank's taking any action to proceed with the foreclosure sale. At the time of the August 20 hearing, there was no foreclosure sale scheduled. Significantly, at that time the Bank had provided Wright with an opportunity to cure her defaults by September 5, after which it had agreed to accept regular payments on the note. Because the Bank was not then attempting to proceed with a foreclosure pursuant to the notices that Wright contends were deficient, the events

6

associated with those notices could not be the source of imminent irreparable harm. Future foreclosure proceedings would require new notices, which might or might not comply with the rules governing foreclosure proceedings. Moreover, by the time of the temporary injunction hearing, the Bank had given Wright the relief she sought in her declaratory judgment action, i.e., it had provided her with an opportunity to cure her default and stated that it would only accelerate the note if she failed to do so within the approximately 30-day time frame they provided. The evidence in the record, therefore, supports the trial court's denial of the request for a temporary injunction on the ground that Wright did not prove the element of imminent irreparable harm.[3] As previously noted, any complaints that the Bank did not have the right to accelerate the note and foreclose because of the manner in which it provided her notices in the past are moot because the Bank did not proceed with foreclosure pursuant to those notices. And, more importantly, at the time the court considered the request for a temporary injunction, the Bank had provided Wright with the relief she sought—an opportunity to cure her defaults and avoid acceleration of the note and subsequent foreclosure. On these facts, we cannot conclude that the trial court abused its discretion in denying the request for a temporary injunction. *Davis*, 571 S.W.2d at 862; *Universal Health Servs., Inc.*, 24 S.W.3d at 577 (denial of temporary injunction not abuse of discretion when one of three required elements is not proven).

---

[3] This is distinguishable from the situation in which a party contends that foreclosure is wrongful for reasons that continue to exist during the pendency of the proceeding such as, for example, when the party attempting to foreclose did not have the right to accelerate the note or when the note is not actually in default.

We also note that alleged procedural defects in the Bank's previous foreclosure attempts are, at least in part, the basis for Wright's claim to have a probable right to recover on the merits of her underlying causes of action. In the event the Bank attempts to foreclose in the future, any such foreclosure would have to be pursuant to different notices from the ones preceding the sales noticed for July 3 and August 7. If Wright believes that those notices are deficient, she may at that time seek injunctive relief from the trial court and, if she is unsuccessful there, from this Court. We overrule Wright's first six issues.

In her seventh issue, Wright asserts that the trial court abused its discretion by refusing to permit her to admit into evidence a tape recording of a conversation between her and the Bank's president. It is evident from the record, however, that Wright never offered the tape recording into evidence. Thus, the trial court did not refuse to admit proffered evidence, as Wright contends on appeal. Regardless of whether the evidence would have been admissible, Wright failed to offer it into evidence and thus failed to obtain a ruling from the trial court that could be the subject of appellate review. *See* Tex. R. App. P. 33.1(a). Moreover, to the extent Wright contends that the contents of the tape recording, had it been admitted, would demonstrate that she was entitled to the temporary injunction, we are unable to evaluate the merits of such a claim because Wright did not make an offer of proof or otherwise make the tape recording part of the appellate record. *See* Tex. R. Evid. 103(a)(2); *In re Commitment of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at *4 (Tex. App.—Beaumont Feb. 28, 2013, pet. filed) (mem. op.) ("Error may be predicated on a ruling that excludes a party's evidence only if the substance of the evidence was made known to the court by offer."). In her brief, Wright asserts that the tape-recorded conversation is evidence supporting her

8

causes of action for fraud, misrepresentation, and breach of the duty of good faith fair dealing and supports her contention that the Bank's notices were sent to an incorrect address. Even assuming that the tape recording contains such evidence, however, the trial court's refusal to admit it, had the court been asked to do so, would not have constituted reversible error because such evidence would not have tended to prove the element of imminent irreparable harm. We overrule Wright's seventh issue.

In her eighth issue, Wright maintains that the trial court abused its discretion in "finding that [she] made any 'material misrepresentations' about the character of the real property at issue." Wright appears to refer to concern expressed by the trial court during the temporary-injunction hearing regarding the fact that Wright's request for a temporary restraining order had not revealed that the property at issue was commercial, as opposed to residential, property.[4] The trial court did not file findings of fact or conclusions of law. To the extent this statement constitutes a "finding," it is not the basis for the trial court's denial of the temporary injunction and is therefore not material to our review of the trial court's order at issue in this appeal. We overrule Wright's eighth issue.

---

[4] This distinction is potentially significant because Wright's application for a temporary injunction was based, in part, on her contention that the Bank failed to provide her with an opportunity to cure the defaults and thus failed to comply with property code section 51.002(d), which requires that the debtor have at least 20 days to cure a default before a notice of sale can be given. *See* Tex. Prop. Code Ann. § 51.002(d) (West Supp. 2012). But this statute applies only to property used as the debtor's residence, not to commercial property such as the building at issue in this case. *See id.* (mortgage servicer shall give debtor at least 20 days to cure default if property is used as debtor's residence).

The trial court also ordered the Bastrop County District Clerk to return to Wright the $1,000 bond she posted in connection with obtaining the temporary restraining order. Wright observes that the check issued to her by the district clerk was drawn on a First National Bank of Bastrop account. In her ninth issue, Wright asserts that because the Bank, a party in this case, also maintains the district clerk's bank account, the trial court should have "recuse[d] itself or move[d] sua sponte for a change of venue" due to an "appearance of partiality stemming from the court's established relationship with the Bank." Essentially, Wright contends that she cannot get a fair hearing in a Bastrop County district court because of the banking relationship between the Bank and the district clerk. Wright cites no authority for the proposition that it is improper for a district court to hear a case in which one of the litigants is a financial institution in which the district clerk of that court holds a bank account. Moreover, Wright does not identify any type of direct or indirect pecuniary or personal interest the trial court might have in the case or that could possibly be affected by its outcome, which is the type of interest required to disqualify a judge. *See Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979). We conclude that the mere fact that the district clerk has a bank account at the Bank does not require that the trial court recuse himself or that the case be transferred to a different venue. We overrule Wright's ninth issue.

## CONCLUSION

The trial court did not abuse its discretion in denying Wright's request for a temporary injunction. At the time of the hearing, the Bank had given Wright an opportunity to cure the defaults, the cure period was still ongoing, and the Bank had neither noticed nor scheduled a foreclosure sale. Having overruled Wright's nine issues, we affirm the trial court's order.

10

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   April 19, 2013