# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00486-CV

**Chioma Okoro, Appellant**

**v.**

**Jose Ernesto Polendo Cardenas and Rosewood Lofts LLC, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-12-002050, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Chioma Okoro, acting pro se, filed this interlocutory appeal from the trial court's denial of her application for temporary injunction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). Okoro sold her home to appellee Rosewood Lofts LLC based on a contract negotiated by appellee Jose Ernesto Polendo Cardenas (Polendo), Rosewood Lofts' authorized representative (collectively the Appellees). Okoro subsequently brought this breach-of-contract action, seeking money damages and injunctive relief. Okoro also sought a temporary injunction to prevent Appellees from performing construction on the property or transferring ownership to any third party, which the trial court denied. On appeal, Okoro asserts that the trial court abused its discretion in denying her application for temporary injunction. We will affirm the trial court's order denying the temporary injunction.

## BACKGROUND

In May of 2010, Appellees negotiated the purchase of Okoro's home for a total purchase price of $220,000. Neither party introduced a copy of this May 2010 contract in the proceeding below, but both parties agree that payments were made under this initial contract to Okoro for the purchase of the property. Okoro would later testify that Rosewood Lofts paid her an initial $25,000[1] "down payment," and then paid her an additional $20,000 in four installments of $5,000 each. Okoro could not recall if any other payments were made to her under this initial contract.

In May of 2011, Polendo contacted Okoro to discuss payment on the remaining purchase price for the property. Rosewood Lofts' attorney met Okoro and drove her to a title company to sign several documents relating to the purchase of Okoro's home (collectively the May 2011 Agreement). Okoro would later testify that she was pressured into signing these documents, that she was not given enough time to review them, and that when she expressed concern about the documents, Rosewood Lofts' attorney assured her that he would explain them to her later. These documents were introduced at the hearing on Okoro's application for temporary injunction, and Okoro acknowledged that she did sign some of the documents.

According to these documents, at the time the parties entered into the May 2011 Agreement, Rosewood Lofts had already paid Okoro $66,250 toward the purchase of her home. The documents further indicate that, in exchange for the deed to the property, Rosewood Lofts would pay approximately (1) $57,000 to pay off Okoro's remaining mortgage, (2) $6,250 to pay

---

[1] Okoro testified that she actually received either $22,000 or $23,000 at that time and loaned the remainder of $25,000 to Rosewood Lofts' attorney as part of a separate agreement. Okoro testified that the attorney subsequently repaid this loan.

off municipal liens on the property, and (3) an additional one-time payment of $12,000 to Okoro, all of which were credited against the purchase price for Okoro's home.[2] After these deductions, Rosewood Lofts would owe Okoro approximately $80,500.

In order to pay this remaining balance, the May 2011 Agreement included an "Amended Promissory Note," under which Rosewood Lofts agreed to pay Okoro $500 per month for three years, and then pay the remainder of the $80,500. Thus, Okoro effectively financed Rosewood Lofts' purchase of her home—at an interest rate of 10% per year—over the course of three years. This note was secured by a "Junior Deed of Trust" giving Okoro a subordinate lien against the property. Rosewood Lofts asserts that it has made the required $500 monthly payments, but Okoro contends she has not received any such payments.

It appears that as a result of construction delays, Okoro became concerned that Rosewood Lofts was having financial difficulty and might default on its full payment for the purchase price. As a result, Okoro filed this suit for damages and injunctive relief, asserting that (1) Appellees had breached the various contracts and (2) the May 2011 Agreement should be rescinded and Rosewood Lofts should be compelled to pay the balance of the purchase price for the property. Okoro also filed an application for temporary injunction to bar the Appellees from continuing construction on the property or transferring title to the property to a third party until Rosewood Lofts paid Okoro in full. Following a hearing, the trial court denied Okoro's application for temporary injunction. This interlocutory appeal followed.

---

[2] During the hearing on her application for temporary injunction, Okoro disputed the calculation of some of these charges. Rosewood Lofts provided documentation for some, but not all, of these expenses.

# STANDARD OF REVIEW

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalf*, 863 S.W.2d 56, 57 (Tex. 1993). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is "the last actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962) (per curiam)). To obtain a temporary injunction, the applicant must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. A probable injury is one that is imminent, irreparable, and has no adequate remedy at law. *Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.).

In an appeal from an order granting or denying a request for a temporary injunction, our review is confined to the validity of the order that grants or denies the injunctive relief. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.—Austin 2001, no pet.). The decision to grant or deny an injunction is within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Walling*, 863 S.W.2d at 57. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (citing *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). In deciding whether the trial court has abused its discretion in denying or granting a

request for a temporary injunction, the reviewing court may neither substitute its judgment for that of the trial court nor consider the merits of the underlying lawsuit. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Synergy Ctr., Ltd.*, 63 S.W.3d at 564. We must review the evidence in the light most favorable to the order and must indulge all reasonable inferences in favor of the decision. *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 344 (Tex. App.—Austin 2001, no pet.). Where, as here, there are no specific findings of fact and conclusions of law, the trial court's order must be upheld on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

## DISCUSSION

On appeal, Okoro asserts that the trial court abused its discretion in denying her application for temporary injunction. Specifically, Okoro claims that the record establishes that (1) Rosewood Lofts breached the various contracts by not "making payments from May 2011–May 2012" and (2) the Appellees committed fraud against Okoro by "tricking and swindling" her into signing the May 2011 Agreement. For purposes of this appeal, we will assume without deciding that Okoro has stated a valid cause of action and has a probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204. Therefore, we consider only whether the record establishes that Okoro will suffer a probable, imminent, and irreparable injury if the temporary injunction does not issue. *See id.*

Even if the record establishes that Rosewood Lofts breached the terms of the May 2011 Agreement, that breach alone would not entitle Okoro to the temporary injunction she seeks. "[C]ircumstances can arise in which a temporary injunction is appropriate to preserve the status quo pending an award of damages at trial." *Walling*, 863 S.W.2d at 58; *see also Brammer v. KB Home*

5

*Lone Star, L.P.*, 114 S.W.3d 101, 108–09 (Tex. App.—Austin 2003, no pet.) (listing cases in which temporary injunction may be appropriate for breach-of-contract claim). However, "the remedy must be determined by the harm suffered," and when the potential damages are capable of calculation and fully compensable, injunctive relief is generally not appropriate. *See Brammer*, 114 S.W.3d at 109 (noting that injunction appropriate when monetary compensation difficult to calculate or not sufficient to protect parties); *see also Universal Health Servs., Inc.*, 24 S.W.34d at 577 (noting that doctors' patients would suffer incalculable damages if temporary injunction did not prevent hospital from closing).

In this case, Okoro's petition requests that the trial court award her "full payment of [her] actual damages," including immediate payment of the outstanding balance owed on the property, pre-judgment and post-judgment interest, and attorney's fees.[3] The record indicates that Okoro's alleged damages are fully capable of calculation and completely redressable through money damages. *See Brammer*, 114 S.W.3d at 109. Okoro seeks to enjoin further construction on the property as a means to compel full payment of these alleged damages rather than prevent any irreparable harm. *See supra* n.3. Thus, the trial court could have reasonably concluded that Okoro would not suffer irreparable harm if it did not grant the temporary injunction.

---

[3] Although the record and pleadings indicate that Okoro also seeks rescission of the May 2011 Agreement, she does not seek rescission of the entire contract for sale of the property. In fact, the record indicates that the Appellees have already demolished Okoro's former residence and begun construction of the new building. Thus, even if Okoro did ultimately rescind the contract and retake title to the property, there is nothing in the record to suggest that a temporary or permanent injunction would prevent any irreparable harm. *See Carter v. White*, 260 S.W. 276, 277 (Tex. Civ. App.—San Antonio 1924, no writ) (noting injunction was ineffective because it required reconstruction of building that had already been torn down).

Similarly, the record indicates that Okoro's junior lien on the property provides her with additional adequate remedies at law. As the Appellees concede, if they fail to make the monthly payments required by the Amended Promissory Note, the Junior Deed of Trust gives Okoro the right to "declare the unpaid principal balance and earned interest . . . immediately due" or "direct [the trustee] to foreclose" on the property.[4] *See* Tex. Prop. Code § 16.10 (providing elements for nonjudicial foreclosure). Therefore, in addition to her general right to contract damages outlined above, the Junior Deed of Trust gives Okoro the option to foreclose on the property and receive payment from the foreclosure sale. The record does not indicate that foreclosure would fail to satisfy Rosewood Lofts' alleged debts to Okoro. *See International Harvester Credit Co. v. Rhoades*, 363 S.W.2d 397, 399 (Tex. Civ. App.—Austin 1962, no writ) (noting that alternative legal remedies presumed adequate absent affirmative showing that judgment debtor cannot satisfy debts). Thus, the trial court could have reasonably concluded that Okoro had multiple adequate remedies at law.

Based on this record, the trial court could have reasonably determined that Okoro would not suffer a probable, imminent, and irreparable injury if the injunction did not issue. Therefore, we cannot conclude that the trial court abused its discretion in denying Okoro's application for temporary injunction. We overrule Okoro's sole issue on appeal.[5]

---

[4] The Junior Deed of Trust also prohibits Rosewood Lofts from selling the property without Okoro's prior written consent. Thus, the Junior Deed of Trust grants Okoro some of the protections she seeks in her application for temporary injunction.

[5] Okoro also complains that the trial court made disrespectful and inappropriate comments during the hearing on her application for temporary injunction, which she asserts demonstrate that the trial court was partial to the Appellees. We do not reach this issue because it is both inadequately briefed and not preserved for appellate review. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Blackwell v. Humble*, 241 S.W.3d 707, 713 (Tex. App.—Austin 2007, no pet.) (noting that party who fails to timely raise grounds for recusal waives right to complain about judge's failure to recuse).

## CONCLUSION

We affirm the trial court's order denying Okoro's application for temporary injunction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   August 27, 2013